**Robert W. WILDBERGER, Jr., Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 95–1614.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 17, 1997.

Decided Jan. 9, 1998.

Robert W. Wildberger, Jr., appearing pro se, was on the briefs for petitioner.

James A. Garcia, argued the cause for amicus curiae on the side of petitioner, with whom Dana C. Contratto, Washington, DC, appointed by the court, was on the briefs.

James F. Blandford, Attorney, Federal Labor Relations Authority, Washington, DC, argued the cause for respondent. David M. Smith, Solicitor, and William E. Persina, Attorney, Washington, DC, were on the brief. Pamela P. Johnson, Attorney, and William R. Tobey, Deputy Solicitor, Washington, DC, entered appearances.

Before: EDWARDS, Chief Judge, WALD and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Under the Civil Service Reform Act, codified at Title 5 of the U.S. Code, the Federal Labor Relations Authority ("FLRA" or "the Authority") is authorized to address charges of unfair labor practices against federal employers, *see generally* 5 U.S.C. §§ 7101–7135 (1994); § 7116(a)-(c) (defining unfair labor practices), while the Merit Systems Protection Board ("MSPB" or "the Board") is authorized to adjudicate employees' appeals from "adverse personnel actions," including suspensions and terminations of employment. *See generally* §§ 7501–7543, 7701–7703. At issue in this case is the Authority's interpretation of the first sentence of 5 U.S.C. § 7116(d), which provides that "[i]ssues which can properly be raised under an appeals procedure [before the MSPB] may not be raised as unfair labor practices prohibited under this section."

Appellant Robert W. Wildberger, Jr., seeks review of the Authority's order dismissing three consolidated unfair labor practice complaints against his former employer, the Small Business Administration ("SBA"), for lack of jurisdiction pursuant to section 7116(d). In addressing Wildberger's claims, the Authority first clarified its rule for determining whether section 7116(d)'s jurisdictional bar applies. On this point, the FLRA held that when the factual predicate and the legal theory underlying an unfair labor practice complaint and a MSPB appeal are the same, the Authority will decline to assert jurisdiction over the unfair labor practice complaint. *United States Small Business Admin. and Robert Wildberger*, 51 F.L.R.A. 413, 1995 WL 648828, at *7 (F.L.R.A. Oct. 31, 1995) ("*Wildberger [FLRA]*"). Purporting to apply this rule, the Authority dismissed all three of Wildberger's consolidated complaints on jurisdictional grounds.

We can find no basis for overturning the Authority's rule for denying jurisdiction under the first sentence of section 7116(d) where: (1) the complaining employee has raised all of the issues that underscore his unfair labor practice charges—in terms of both the factual predicate and the legal theories raised—in his appeal before the MSPB; (2) these issues are within the compass of the MSPB's jurisdiction; and (3) the MSPB has not declined jurisdiction over any of the claims raised by the employee. We find that the Authority correctly applied this rule in two of the three consolidated complaints. Our holding is narrowly tailored to the facts of this case and does not address the application of section 7116(d) where the factors emphasized here are not present.

## I. BACKGROUND

### A. Statutory Scheme

In 1978, Congress enacted the Civil Service Reform Act to replace the prior "patchwork" system of laws governing federal employment with "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988). Prior to the Act, federal employees could bring employment actions in a variety of administrative and judicial forums, sometimes leading to confusing and contradictory results. Under the Act's simplified scheme, employment matters involving federal employees' rights to engage in union-related activities generally may be raised with the FLRA as unfair labor practice charges, while matters involving hiring, firing, failure to promote, and the like are within the jurisdiction of the MSPB.

A victim of an alleged unfair labor practice may petition the FLRA's General Counsel, who determines whether the allegations constitute an unfair labor practice and, if so, files a complaint on behalf of the party making the allegations. 5 U.S.C. § 7118. The FLRA may conduct hearings to resolve such complaints. § 7118(a)(6)-(8). Once it determines that a federal employer has committed an unfair labor practice, the FLRA is empowered to order broad remedial action prohibiting the agency from engaging in similar activity as to all of its employees. *See* §§ 7105(g)(3), 7118(a)(7); *National Treasury Employees Union v. FLRA*, 910 F.2d 964, 967 (D.C.Cir.1990) (en banc). Judicial review of FLRA decisions may be had in either the

U.S. Court of Appeals for the circuit in which the aggrieved party resides or conducts business, or in the U.S. Court of Appeals for the District of Columbia. § 7123(a).

The adverse personnel actions over which the MSPB has exclusive jurisdiction include: "(1) a removal; (2) a suspension for more than fourteen days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of thirty days or less." §§ 7512, 7701. Decisions rendered by the MSPB regarding appeals of such actions are reviewable only by the United States Court of Appeals for the Federal Circuit. § 7703(b)(1).

Chapter 23 of Title 5 sets forth Merit System Principles, including prohibited personnel practices, to guide the MSPB. §§ 2301–2305. These principles prohibit any person who has authority to take an adverse action against a subordinate employee from doing so in retaliation for the subordinate employee's "exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation," § 2302(b)(9), including the exercise of rights referenced in § 7116(a). *See, e.g., Bodinus v. Department of the Treasury*, 7 MSPB 385, 7 M.S.P.R. 536, 540–41 (1981) (construing § 2302(b)(9) to include union representational activities); *id.* 7 M.S.P.R. at 541–42 ("[W]hile the Board is without jurisdiction to adjudicate an unfair labor practice allegation based on anti-union animus, . . . the Board may properly consider appellant's alleged evidence of anti-union animus if it is pertinent to showing his affirmative defense of a violation of 2302(b)(9).").

■ Section 7116(d) provides:

(d) Issues which can properly be raised under an appeals procedure may not be raised as unfair labor practices prohibited under this section. Except for matters wherein, under section 7121(e) and (f) of this title, an employee has an option of using the negotiated grievance procedure or an appeals procedure, issues which can be raised under a grievance procedure may, in the discretion of the aggrieved party, be raised under the grievance procedure or as an unfair labor practice under this section, but not under both procedures.

This provision is intended to simplify adjudication of employee rights and avoid the confusing and contradictory outcomes which could result if parties were permitted to adjudicate the same issue in a variety of administrative and judicial forums with overlapping jurisdiction. *See Carter v. Kurzejeski*, 706 F.2d 835, 839–40 (8th Cir.1983) ("Th[e] procedural framework [of the Civil Service Reform Act] indicates the care taken by Congress to preserve the rights of aggrieved employees while avoiding the problems of overlapping and inconsistent jurisdiction. Congress obviously recognized multiple possibilities for jurisdiction by arbitrators, the FLRA, the MSPB, and the courts in fashioning this framework.").

## B. *Wildberger's Claims*

Appellant Wildberger was employed by the SBA as a program analyst from June 1980 until September 1992 when his employment was terminated. In the year immediately preceding his termination, Wildberger, a former president of the American Federation of Government Employees local that represents SBA employees, formed a rival union, Solidarity, USA ("Solidarity"). Wildberger spent considerable time that year trying to recruit SBA employees to join Solidarity. Wildberger engaged in his Solidarity-related union organizing activities during work hours, using agency resources and equipment such as the SBA e-mail system and SBA telephones.

Due to clashes between Wildberger and SBA management over the manner in which he carried out his Solidarity-related activities, Wildberger filed unfair labor practice charges against the SBA, which resulted in the FLRA's issuance of the three complaints at issue here. The threat complaint, issued July 29, 1992, addressed Wildberger's claim that SBA supervisor James Charney had threatened to deny Wildberger's training requests and to fire him unless "the conflict created by the labor organization Wildberger had formed" stopped. *See* Complaint and Notice of Hearing (No. 20821), J.A. 294–96. The proposed removal complaint, issued October 13, 1992, challenged the SBA's issuance on August 3, 1992, of a letter proposing to terminate Wildberger on numerous grounds,

including his willful refusal to comply with SBA directives not to use SBA equipment and official work time to conduct Solidarity-related business. *See* Complaint and Notice of Hearing (No. 21010), J.A. 326–28. The disparate treatment complaint, issued November 20, 1992, alleged that the SBA had discriminated against Wildberger for engaging in protected activity by inundating him with memoranda, prohibiting him from using SBA equipment for personal use, and imposing other restrictions on him, even though other employees in his bargaining unit were not subject to such restrictions. *See* Complaint and Notice of Hearing (No. 21060), J.A. 330–33.

On September 16, 1992, the SBA terminated Wildberger for the reasons specified in the notice of proposed removal. *See* Final Removal Letter, J.A. 494–519. Wildberger appealed his termination to the MSPB. Wildberger argued to the MSPB that his termination was unlawful because, *inter alia*, (1) the termination was indicative of retaliation and discrimination based on his exercise of statutorily protected rights, as alleged in the disparate treatment and proposed removal complaints, and (2) the SBA official who proposed his removal, James Charney, was motivated by personal animus against Wildberger. In alleging animus on the part of Charney, Wildberger referenced the same incidents alleged in the threat complaint.

On February 7, 1994, an Administrative Law Judge for the FLRA ("FLRA–ALJ") held hearings on Wildberger's unfair labor practice complaints. The FLRA–ALJ recommended that the threat complaint and the disparate treatment complaint be dismissed on the merits, based on his findings that the evidence presented as to each failed to prove by a preponderance of the evidence that the SBA had engaged in an unfair labor practice. J.A. 116, 124–28. The FLRA–ALJ recommended that the proposed removal complaint be dismissed pursuant to section 7116(d) for lack of jurisdiction. J.A. 119–20 (citing *Department of Commerce, Bureau of the Census v. FLRA*, 976 F.2d 882 (4th Cir.1992)). Both Wildberger and the General Counsel for the FLRA filed exceptions to the FLRA–ALJ's recommendations.

### 1. The MSPB Decision

On May 4, 1995, the Administrative Law Judge hearing Wildberger's MSPB appeal ("MSPB–ALJ") concluded that the SBA had just cause for terminating Wildberger's employment. *See* J.A. 558–95. The Board affirmed the MSPB–ALJ's decision, in relevant part, on March 6, 1996. *Wildberger v. SBA*, 69 M.S.P.R. 667 (1996) (modifying in part and affirming in part). One of the bases for termination upheld by the MSPB–ALJ was Wildberger's willful refusal to comply with SBA directives not to use SBA equipment and official work time to conduct Solidarity-related business. J.A. 569–72 (upholding charge 2 (insubordination)); J.A. 574–75 (upholding charge 4 (unauthorized use of government property)). The MSPB–ALJ also considered and rejected Wildberger's affirmative defenses, including his claim that the proposing official, James Charney, was motivated by personal animus, *see* J.A. 580–82, and his claim that the removal action was taken in retaliation for protected union activity. J.A. 587–90.

### 2. The Authority's Decision

On October 31, 1995, the Authority reviewed the FLRA–ALJ's recommendations and dismissed all three unfair labor practice complaints on jurisdictional grounds. After first reviewing its own precedents as well as circuit law interpreting section 7116(d), the Authority clarified its test for determining whether the jurisdictional bar imposed by the first sentence of section 7116(d) applies: when the factual predicate and the legal theory underlying an unfair labor practice complaint and a MSPB appeal are the same, the Authority will decline to assert jurisdiction over the unfair labor practice complaint. *Wildberger [FLRA]*, 1995 WL 648828, at *7. The Authority clarified that, because the FLRA—unlike the MSPB—has jurisdiction to review unfair labor practice charges brought by labor organizations as well as individuals, it would retain jurisdiction over charges brought by labor organizations that focus on the organization's institutional interests, as opposed to the rights of an individual employee, notwithstanding any related

MSPB appeals brought by individual employees. *Id.* The Authority then dismissed all three of Wildberger's consolidated complaints as subject to section 7116(d)'s jurisdictional bar. *Id.* at *8–9.

Wildberger, acting pro se, appealed the Authority's decisions to this court, and the court appointed amicus curiae ("Amicus") to present arguments on his behalf.

## II. ANALYSIS

### A. Standard of Review

■■■■ "[T]he Authority is entitled to considerable deference when it exercises its special function of applying the general provisions of [the Civil Service Reform] Act to the complexities of federal labor relations." *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (internal quotations omitted). We defer to the FLRA's construction of its enabling statute, including its interpretation of its statutory jurisdiction, so long as it is reasonable and not contrary to congressional intent. *Pension Benefit Guaranty Corp. v. FLRA*, 967 F.2d 658, 665 (D.C.Cir. 1992) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984)); *see also Oklahoma Natural Gas Co. v. FERC*, 28 F.3d 1281, 1283–84 (D.C.Cir.1994) (applying *Chevron* deference to agency's determination of its statutory jurisdiction). Section 7123(c) provides for judicial review of the Authority's orders on the record in accordance with the Administrative Procedure Act, 5 U.S.C. § 706. Accordingly, we "set aside the FLRA's order only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Pension Benefit*, 967 F.2d at 665.

### B. Clarifying Section 7116(d)'s Jurisdictional Bars

In *U.S. Dep't of the Army, Army Finance & Accounting Ctr. and American Fed'n of Gov't Employees, Local 1411*, 38 F.L.R.A. 1345 (1991) ("*Army Finance*"), enforced sub nom. *American Fed'n of Gov't Employees, AFL–CIO, Local 1411 v. FLRA*, 960 F.2d 176 (D.C.Cir.1992) ("*Local 1411*"), the Authority developed a test for determining whether a grievance brought under a contractual grievance procedure raises the same issue as an earlier-filed unfair labor practice charge for the purpose of applying the jurisdictional bar imposed by the second sentence of section 7116(d) (requiring an aggrieved party to choose between a contractual grievance procedure and filing an unfair labor practice charge with the FLRA). Under this test,

> [i]n determining whether the procedures involved the same issue, the Authority does not focus on whether the action was proposed or definite. Rather, the Authority looks at whether the [unfair labor practice] charge arose from the same set of factual circumstances as the grievance and the theory advanced in support of the [unfair labor practice] charge and the grievance are substantially similar.

*Id.* at 1350–51. The Authority found that the basic principles of preclusion outlined in *Army Finance* should be adopted here in applying the jurisdictional bar imposed by the first sentence of section 7116(d). *Wildberger [FLRA]*, 1995 WL 648828, at *7.

■■■■ We can find no quibble with the Authority's rule, insofar as it is limited to circumstances where (1) the complaining employee has raised all of the issues that underscore his unfair labor practice charges in his appeal before the MSPB; (2) these issues are within the compass of the MSPB's jurisdiction; and (3) the MSPB has not declined jurisdiction over any of the claims raised by the employee. Consistent with the test articulated by the Authority in *Army Finance* and affirmed by this court in *Local 1411*, the question of whether a complaining employee raises the "same issues" in both proceedings does not focus on whether the action was proposed or definite, but rather on whether the issues raised in the appeal arose from the same set of factual circumstances as the unfair labor practice complaint and the theory advanced in support of the unfair labor practice charge and the appeal are substantially similar. *Cf. Army Finance*, 38 F.L.R.A. at 1350–51, *affirmed sub nom. Local 1411*, 960 F.2d at 178.

Our holding is limited to the facts of this case. We decline to endorse the Authority's

rule more broadly, because, frankly, we are unsure just how the rule might be applied in situations not raised in this case. We also mean to make clear that we are not placing additional restrictions on the MSPB. When an employee raises issues for adjudication by the MSPB, it is for the MSPB to consider how each of the issues raised bears on the employee's appeal of the employer's adverse action, *i.e.*, whether the adverse action was taken in retaliation for Appellant's exercise of protected activities or whether instead the adverse action is to be upheld or reversed on some other ground.

Both Wildberger and Amicus argue that this court's decision in *Barnes v. Small*, 840 F.2d 972 (D.C.Cir.1988), requires a different interpretation of section 7116(d). We disagree. In *Barnes,* as here, the plaintiff attempted to raise the same issues in both an MSPB appeal and an unfair labor practice complaint. However, the General Counsel for the FLRA declined to issue a complaint to prosecute the unfair labor charges alleged by the plaintiff, upon finding that the plaintiff " 'had knowingly engaged in flagrant misconduct falling outside of the protection of the [Civil Service Reform Act].' " *Id.* at 980–81 (quoting FLRA General Counsel). The MSPB subsequently declined to exercise jurisdiction over affirmative defenses that reiterated the unfair labor practice charges that the FLRA General Counsel had declined to prosecute. *Id.* at 981. Significantly, in *Barnes,* the decision not to prosecute the unfair labor practice charges was *on the merits,* not on jurisdictional grounds pursuant to section 7116(d). In other words, the court in *Barnes* affirmed the MSPB's decision to decline jurisdiction in a situation in which the FLRA General Counsel had already rejected the unfair labor practice charges for lack of merit. *Id.* Thus, both the facts and the legal issues in *Barnes* were substantially different from those at issue here. *Barnes* did not involve review of the FLRA's interpretation of its jurisdiction under section 7116(d), the issue presented in the case before us.

Moreover, to the extent that language in *Barnes* can be read to suggest that the MSPB can never consider matters that could *properly* be raised as unfair labor practices before the FLRA, such language is dicta. Taken out of context, this language probably suggests more than the court intended. It is certainly clear that the MSPB not only can but *must* address issues that could properly underlie unfair labor practice charges where such issues are raised as affirmative defenses alleging "prohibited personnel practices." *See* 5 U.S.C. § 2302(b)(9) (1994); *Ireland v. Department of Health & Human Servs., Social Security Admin.,* 34 M.S.P.R. 614 (1987); *Bodinus,* 7 MSPB 385, 7 M.S.P.R. at 540–42. *Barnes* does not foreclose this possibility. The decision in *Barnes* would be problematic only if the FLRA had dismissed the unfair labor practice complaints at issue in that case *under section 7116(d)* and then the MSPB had declined to consider the affirmative defenses raised by the employee. In such a situation, the employee would be without a forum in which to raise his complaints. That did not happen.

Notwithstanding the Authority's stated exception for retaining jurisdiction over unfair labor practice charges focusing on the institutional interests of labor organizations, Amicus argues that, by refusing to exercise jurisdiction over unfair labor practice complaints focusing solely on individual rights, the Authority disregards its responsibility to provide systemic remedies for unfair labor practices. By so doing, Amicus contends, the Authority impermissibly frustrates the congressional intent of the Civil Service Reform Act. *See* Brief for Amicus at 17–31 (contrasting the Authority's broad remedial powers to order systemic relief, such as ordering an offending agency to cease and desist its unfair labor practices and posting public notices to that effect, with the Board's more limited remedial powers). In addition, Amicus argues that the Authority's interpretation of section 7116(d) "provides agencies with an incentive to fire employees in order to avoid unfair labor practice charges." *Id.* at 32–34.

As Amicus contends, the FLRA's broad remedial powers are a central feature of the Civil Service Reform Act. To the extent that 7116(d)'s jurisdictional bar lessens the FLRA's role in cases where an individual raises the same issues in both an unfair labor practice charge and a MSPB appeal, howev-

er, the Authority's interpretation of section 7116(d) remains consistent with the Supreme Court's general understanding that Congress, in enacting the Civil Service Reform Act, sought to "balance the legitimate interests of ... federal employees with the needs of sound and efficient administration" within an "integrated scheme of administrative and judicial review" replacing the complicated "patchwork" system that preceded the Civil Service Reform Act. *See Fausto,* 484 U.S. at 445, 108 S.Ct. at 672. Although *Fausto* did not focus on the Authority's jurisdiction to hear unfair labor practice complaints in light of section 7116(d), the Court recognized in *Fausto* that "the primacy of the MSPB for administrative resolution of disputes over adverse personnel action," with judicial review by the Federal Circuit, is an important "structural element" evident in the framework of the Act. *Id.* at 449, 108 S.Ct. at 674 (citations omitted). It is likely that Congress' effort to balance competing concerns in the course of its comprehensive overhaul of the civil service system entailed various trade-offs. The Authority's interpretation of how section 7116(d) strikes the balance between the FLRA's jurisdiction to provide systemic remedies to vindicate the public interest in preventing unfair labor practices and the MSPB's exclusive jurisdiction over appeals of adverse actions is neither unreasonable nor contrary to the purpose of the Act as articulated by the Supreme Court in *Fausto.*

Wildberger also contends that a number of due process errors on the part of the MSPB support his claim that the FLRA should assert jurisdiction over his unfair labor practice complaints. However, the proper course for remedying such alleged errors is to seek review of the MSPB decision by the Federal Circuit. Such errors on the part of the MSPB would not render 7116(d)'s jurisdictional bar inapplicable or otherwise provide a basis for collateral review of the MSPB decision by the FLRA or this court.

### C. Whether Section 7116(d) Bars the Authority from Exercising Jurisdiction over Wildberger's Unfair Labor Practice Charges

The record indicates that Wildberger raised all of the issues that underscored his consolidated unfair labor practice charges in his appeal before the MSPB. However, in a prehearing conference, the MSPB–ALJ stated that she declined jurisdiction over Wildberger's allegations of unfair labor practices because unfair labor practice charges are outside the Board's jurisdiction. Conference Summary, J.A. 90. The Board had instructed the MSPB–ALJ to allow Wildberger "an opportunity to present any and all nonfrivolous affirmative defenses." *Wildberger v. SBA,* 65 M.S.P.R. 673, 678 (1994). In a subsequent decision, the MSPB–ALJ did, in fact, consider Wildberger's affirmative defenses, including his claim that the proposing official, James Charney, was motivated by personal animus, *see* J.A. 580–82, and his claim that the removal action was taken in retaliation for protected union activities. J.A. 587–90. The MSPB–ALJ ultimately decided that the SBA had good cause to terminate Wildberger's employment and rejected Wildberger's affirmative defenses, and thus dismissed Wildberger's appeal on the merits. *See* J.A. 558–95. The Board affirmed this decision. *Wildberger v. SBA,* 69 M.S.P.R. 667 (1996) (affirming relevant parts of MSPB–ALJ's decision).

In light of the sequence of events before the MSPB, it appears that the MSPB–ALJ's statement in the prehearing conference was meant to indicate that the ALJ would not exercise jurisdiction over Wildberger's allegations of unfair labor practices *per se,* even though she was required to address the *issues* underlying Wildberger's unfair labor practice charges to the extent that the same issues underscored his affirmative defenses. Accordingly, section 7116(d) would only bar the Authority's jurisdiction over Wildberger's unfair labor practice charges *if* the same issues underlying these charges—*i.e.,* the same factual predicates and legal theories— were considered by the MSPB as affirmative defenses.

#### 1. The Proposed Removal Complaint

■ The SBA's final letter of removal terminating Wildberger's employment essentially reiterated the same charges and speci-

fications set forth in its letter proposing to remove him. *Compare* Final Removal Letter, J.A. 494–519 *with* Proposed Removal Letter, J.A. 298–325. Thus, the factual predicate underlying Wildberger's proposed removal complaint and his MSPB appeal are the same. *See Local 1411*, 960 F.2d at 178 (holding that the distinction between proposed and actual agency action is a distinction without a difference which, if credited for the purposes of applying § 7116(d), "would drain § 7116(d) of much of its utility").

The proposed removal complaint alleges that the SBA committed an unfair labor practice in violation of 5 U.S.C. § 7116(a)(1) (prohibiting federal employers from interfering with, restraining, or coercing any employee in the exercise of any right under chapter 71 of Title 5) by referencing Wildberger's protected activity as a union organizer. In addressing Wildberger's affirmative defense that his employment was terminated in retaliation for protected union activity in violation of 5 U.S.C. § 2302(b)(9), the MSPB–ALJ applied the analysis articulated by the Board in *Ireland,* 34 M.S.P.R. at 618–19. Under the *Ireland* analysis, to establish a claim of reprisal for union activities in violation of section 2302(b)(9), an employee must demonstrate that he engaged in an activity protected by statute, that he subsequently was subject to an adverse action, that the proposing and deciding officials knew that the employee was engaged in the protected activity, and that there was a causal connection between the protected activity and the adverse action. *Id.* The MSPB–ALJ found that, contrary to Wildberger's assertion, he did not possess a statutorily-protected right to utilize official time or other SBA resources for his union organizing activity. J.A. 587–88. Moreover, the MSPB–ALJ determined that Wildberger had failed to show a sufficient causal connection between any statutorily-protected activities in which he was engaged and the termination decision. J.A. 589–90. Thus, the same legal theory—that the termination was in retaliation for Wildberger's protected activities—was argued to both the FLRA and the MSPB, and this theory was rejected by the MSPB in the context of considering Wildberger's affirmative defenses. Accordingly,

the Authority's determination that it was barred by the first sentence of section 7116(d) from exercising jurisdiction over Wildberger's proposed removal complaint was not arbitrary and capricious.

### 2. The Threat Complaint ·

▆ The threat complaint alleges that Wildberger's supervisor, James Charney, committed an unfair labor practice in violation of 5 U.S.C. § 7116(a)(1) by threatening to deny Wildberger's training requests and to fire Wildberger if "the conflict created by the labor organization Wildberger had formed" did not stop. Complaint and Notice of Hearing (Case No. 20821), J.A. 295. These same issues were considered by the MSPB in the context of Wildberger's affirmative defense claiming that the proposing official (Charney) was motivated by personal animus. *See* J.A. 580–82.

The record indicates that Wildberger alleged as an affirmative defense that Charney was motivated by personal animus because Wildberger served him with the threat complaint one work day before Charney issued the letter proposing Wildberger's removal. *See* J.A. 580. The MSPB–ALJ reasoned that this allegation "may be analyzed in two ways: as a claim that Mr. Charney's impartiality had been compromised and as a claim that Mr. Charney retaliated against [Wildberger] for filing the FLRA complaint." J.A. 581. The MSPB–ALJ rejected the suggestion that Charney proposed Wildberger's removal in retaliation for Wildberger's filing of the threat complaint. J.A. 582. Furthermore, the MSPB–ALJ determined that "to prevail on the allegation of personal animus the appellant would have to show actual bias or the existence of an intolerably high risk of unfairness." J.A. 581 (citations omitted). Turning to Wildberger's assertion that Charney had illegally threatened him as evidence of Charney's alleged bias, the MSPB–ALJ considered the conflicting testimony of Charney and Wildberger and concluded that Wildberger had not shown, by credible evidence, that Charney had ever threatened him. J.A. 581. Thus, the MSPB addressed the central issue underscoring Wildberger's threat complaint in the context of considering his affir-

mative defenses. Accordingly, the Authority's determination that it was barred by the first sentence of section 7116(d) from exercising jurisdiction over Wildberger's threat complaint was not arbitrary and capricious.

### 3. The Disparate Treatment Complaint

The disparate treatment complaint alleges that the SBA committed an unfair labor practice in violation of 5 U.S.C. § 7116(a)(1) by inundating Wildberger with memoranda, by prohibiting him from using various agency resources (such as e-mail) for personal reasons, and by imposing a number of other restrictions on him. Complaint and Notice of Hearing (Case No. 21060), J.A. 331–32. In addition, the complaint alleged that the SBA committed an unfair labor practice in violation of 5 U.S.C. § 7116(a)(2) (prohibiting federal employees from discouraging membership in any labor organization through discrimination in working conditions) by imposing the itemized restrictions on Wildberger while not applying the same restrictions to other bargaining unit employees. *Id.*

When this complaint was initially considered by the FLRA, the General Counsel for the FLRA emphasized the *discriminatory nature of the restrictions* imposed upon Wildberger, *see* J.A. 79–80, and the FLRA-ALJ decided the claim against Wildberger on the merits, not on jurisdictional grounds. *See* J.A. 120–27. The Authority, however, rejected the ALJ's determination and dismissed this claim under section 7116(d). *Wildberger [FLRA]*, 1995 WL 648828, at *8–9.

Although the MSPB–ALJ's determination that Wildberger's use of agency resources for union organizing purposes was not statutorily-protected activity might be construed as a preclusive determination of Wildberger's claim that SBA orders prohibiting such use violated section 7116(a)(1), the MSPB never addressed Wildberger's allegations of discriminatory treatment in violation of section 7116(a)(2). Moreover, the record does not clearly indicate that these issues necessarily came into play in the affirmative defenses considered by the MSPB. Thus, although to some extent the factual predicate underlying Wildberger's disparate treatment complaint was addressed by the MSPB, the MSPB did not consider—and indeed declined jurisdiction over—one of the legal theories raised in this complaint. Accordingly, this complaint is remanded to the Authority for a decision on the merits.

### 4. Wildberger's Complaints Focus on Individual, not Institutional, Interests

Significantly, the FLRA maintained that it will assert jurisdiction over unfair labor practice charges which affect union organizing on a larger scale, as opposed to the activities of a single individual who brings unfair labor practice charges, subsequently suffers an adverse action, and raises the same issues underlying the unfair labor practice charges in appealing the adverse action to the MSPB. *Wildberger [FLRA]*, 1995 WL 648828, at *7. Whether or not a particular unfair labor practice charge fits within this exception in any given case is for the Authority to determine in the first instance. Although Wildberger suggests that he has "institutional interests as National President of SOLIDARITY U.S.A.," *see, e.g.,* Brief for Petitioner at 27, the unfair labor practice complaints were filed in Wildberger's name, not Solidarity's, and assert only Wildberger's *individual rights* to " 'form, join, or assist any labor organization ... freely and without fear of penalty or reprisal ...,' " not Solidarity's institutional interests *per se. Id.* (quoting 5 U.S.C. § 7102). *Cf. Local 1411*, 960 F.2d at 179 (" '[Section 7116(d) ] does not preclude a union in its institutional capacity as an aggrieved party from filing an unfair labor practice charge to enforce its own independent rights merely because an employee has initiated an appeal or grievance ... based on the same factual situation to enforce his individual rights.' ") (quoting *Cornelius v. Nutt*, 472 U.S. 648, 665 n. 20, 105 S.Ct. 2882, 2892, 86 L.Ed.2d 515 (1985) (alterations in original)). Thus, the Authority's determination that Wildberger's unfair labor practice complaints do not come within its stated exception for charges filed by labor organizations asserting their own institutional interests was not arbitrary and capricious.

### D. *Matters Not Reached*

As noted above, our holding in this case does not purport to resolve how section 7116(d) might be applied in other situations which do not closely comport with the facts of this case. In particular, this case should *not* be interpreted to mean that all unfair labor practice charges involving an employee who subsequently appeals an adverse action to the MSPB should necessarily be subsumed into the MSPB proceeding. For example, suppose an employee who allegedly suffered harassment from his employer for engaging in union organizing activities and filed unfair labor practice charges alleging such harassment was subsequently removed for alleged theft. If, in appealing the termination to the MSPB, the employee argues only that the employer's claim of theft cannot be sustained, not that the action was taken in retaliation for his union organizing activities, it is not clear whether section 7116(d) should apply. Where the employee did not raise the issues underlying his unfair labor practice charges before the MSPB, the question of whether his unfair labor practice charges could be or should be subsumed into his MSPB appeal, or whether instead they are sufficiently separate to preserve the FLRA's jurisdiction over them notwithstanding the MSPB appeal, are questions that must be addressed by the FLRA in future cases.

We also want to make it clear that our holding here is not intended as either an endorsement or a rejection of the Fourth Circuit's holding in *Department of Commerce, Bureau of the Census v. FLRA,* 976 F.2d 882 (4th Cir.1992) ("*Commerce*"). The Authority's judgment in this case appears to rest on *Commerce;* this is hardly surprising, given that the decision in *Commerce* is broad enough to support the result reached by FLRA here. But, on this record, we are not prepared to venture beyond the facts at hand.

The *Commerce* court held that, under section 7116(d), once an employee had commenced a MSPB appeal, he was constrained to bring all his administrative claims in the MSPB proceeding and the FLRA was barred from adjudicating any unfair labor practice charges which are not "sufficiently discrete from his challenge to his ultimate removal." *Id.* at 888. Both the facts and the holding in *Commerce* are distinct from the case before us. The issues underscoring the unfair labor practice charges in *Commerce* were adjudicated by the FLRA after a related MSPB appeal was filed but before the MSPB had adjudicated the appeal. *See id.* at 886. Therefore, the *Commerce* court could not frame its opinion in terms of issues *actually* presented to and considered by the MSPB, but instead reached the question of whether the issues underlying the unfair labor practice charges were necessarily subsumed into the pending MSPB proceeding. *See id.* at 890 (noting that, while the MSPB is barred from adjudicating ULP charges *per se,* the issues underlying the employee's ULP charge "*may* be raised in an MSPB procedure" as affirmative defenses) (emphasis added); *cf. id.* ("Only where [ ] initial disciplinary actions ripen into full-blown 'adverse employment actions' will sole jurisdiction vest in the MSPB under the first sentence of § 7116(d)."). The fact that the Fourth Circuit reached a question that this court reserves does not make this court's decision inconsistent with that in *Commerce;* the Fourth Circuit had a different case before it.

### III. CONCLUSION

For the reasons explained above, we deny the petition for review challenging the Authority's dismissal of Appellant's proposed removal complaint and threat complaint pursuant to the jurisdictional bar imposed by the first sentence of section 7116(d). However, we find that the Authority's jurisdiction over Appellant's disparate treatment complaint is not barred by section 7116(d). Accordingly, the disparate treatment complaint is hereby remanded for consideration on the merits by the Authority.

*So ordered.*