RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0151P (6th Cir.)
File Name: 01a0151p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TRACY D. FISHER,
      *Plaintiff-Appellant,*

      *v.*

F. WHITTEN PETERS, Acting
Secretary of the United States
Air Force,
      *Defendant-Appellee.*

No. 99-5830

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 98-00220—R. Leon Jordan, District Judge.

Argued: December 6, 2000

Decided and Filed: April 9, 2001[*]

Before: BOGGS and GILMAN, Circuit Judges;
BECKWITH, District Judge.[**]

_____

[*] This decision was originally issued as an "unpublished decision" filed on April 9, 2001.

[**] The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** Carol S. Nickle, NICKLE & LAFEVOR, Knoxville, Tennessee, for Appellant. E. Roy Hawkens, U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION, APPELLATE SECTION, Washington, D.C., for Appellee. **ON BRIEF:** Carol S. Nickle, NICKLE & LAFEVOR, Knoxville, Tennessee, for Appellant. E. Roy Hawkens, Marleigh D. Dover, U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION, APPELLATE SECTION, Washington, D.C., for Appellee.

---

**OPINION**

---

BECKWITH, District Judge. Tracy Fisher ("Plaintiff") appeals the district court's order granting summary judgment to Defendant. For the following reasons, we affirm the district court's judgment.

## I. Facts and Procedural History

During the relevant period of time, Plaintiff worked at the McGhee Tyson Air National Guard Base. As an Accounting Technician, she served as a federal civilian employee of the United States Air Force at the GS-6 level. In addition, she served as a Guard technician in the Tennessee Air National Guard holding the rank of Technical Sergeant.[1] Plaintiff's

---

[1]The National Guard Technicians Act mandates that a technician

(1) Be a military technician (dual status) as defined in section 10216(a) of title 10.

(2) Be a member of the National Guard.

(3) Hold the military grade specified by the Secretary concerned

duties as an Accounting Technician included paying invoices for services provided to the base and processing travel vouchers. As a Guard technician, Plaintiff was required to participate one weekend per month in "unit training assemblies" or Guard duty days. Guard technicians at the McGhee Tyson Guard Base are required to wear uniforms during the week as well as on the weekend assemblies. Military courtesies such as saluting superior officers are observed.

During the performance appraisal rating period of 1994-1995, MSgt Kenneth "Bud" Knight, an Active Guard Reservist, served as the Supervisory Accounting Technician and as Plaintiff's immediate supervisor for purposes of both Plaintiff's technician work and her Guard duties. Lt Col Gary Wade served as Plaintiff's second-level supervisor in both her technician and Guard duties, and Col Knable served as Plaintiff's third-level supervisor for both duties.[2] During that appraisal period, Plaintiff received a single performance appraisal which covered both her technician and Guard duties. MSgt Knight was the appraiser; Lt Col Wade was the reviewing authority; and Col Knable was the approving official.

---

for that position.

(4) While performing duties as a military technician (dual status), wear the uniform appropriate for the member's grade and component of the armed forces.

32 U.S.C.A. § 709(b).

[2]In an affidavit dated June 3, 1998, Col Glen Knable stated that the chain of command for Guard technicians "is laid out in two separate manning documents" -- one covering the work week chain of command and the other covering the chain of command for Guard duty days or drill weekends. At that time, Plaintiff's chain of command was the same for both positions, except that her immediate supervisor in her technician chain of command was Captain Steve Keeney and her immediate supervisor for Guard duty was Senior Master Sergeant Linda Horner.

In her Complaint, Plaintiff alleges that on or about January 19, 1996, Lt Col Wade downgraded her technician performance appraisal and forwarded it to the Support Personnel Management office without Plaintiff's signature. According to Plaintiff, MSgt Knight permitted Plaintiff to prepare her own evaluation. Plaintiff, who rated herself "outstanding," claims that her immediate supervisor initially agreed with this rating. Plaintiff alleges that Lt Col Wade subsequently changed this "outstanding" rating to an "excellent" rating.

In approximately August of 1996, Plaintiff applied for the position of Supervisory Accounting Technician, the position previously held by MSgt Knight. The applicants for that position were directed to submit a military service resume as well as a resume describing work experience, education, awards, etc. Lt Col Wade served as the "recommending official" in filling MSgt Knight's vacancy. Lt Col Wade selected a male candidate who Plaintiff described as "far less qualified" than her. Under the perception that Lt Col Wade discriminated against her by failing to select her, Plaintiff filed an administrative complaint with the Equal Opportunity Office claiming gender discrimination.

On or about March 20, 1997, Plaintiff applied for the position of Supply Management Officer. The Supply Management Officer is the person ultimately accountable for all government property on the base, other than real property and aircraft. The officer's responsibilities encompass all requisition activities leading to the acquisition of government property on the base. The position also requires an officer's appointment in the Guard. Applicants for the position were directed to submit a military service resume as well as a resume describing work experience, training, awards, etc. Major Bruce Lonas served as the "recommending official" in filling the vacancy for the position. In assessing the candidates for the position of Supply Management Officer, Major Lonas considered both their military and technician qualifications. Major Lonas considered military bearing to be significant because the position "required membership in the

equitable estoppel against the Government must establish, in addition to the traditional elements, "'more than mere negligence, delay, inaction, or failure to follow an internal agency guideline.'" *Ingalls Shipbuilding, Inc.*, 976 F.2d at 938 (citations omitted).

During oral argument before this Court, Defense counsel represented that Defendant has offered Plaintiff the opportunity to pursue military channels for two out of the three years that she has proceeded through the civil process. Further, Defense counsel represented that Plaintiff still has that option and is not barred by any military statute of limitations. Rejecting Plaintiff's estoppel argument, the district court, in the present case, noted that, in oral argument, Defendant confirmed that Plaintiff's military channels were still available to her. Because Plaintiff had and continues to have this alternative remedy available to her, we hold that denying her estoppel claim will not "work a serious injustice." *Bunting v. Railroad Ret. Bd.*, 7 F.3d 232 (6th Cir. 1993).

Plaintiff's estoppel claim is not well-taken. Assuming, *arguendo*, that we could use the doctrine of estoppel to confer jurisdiction on a non-justiciable claim, Plaintiff has not established that she would suffer a serious harm or injustice if we did not confer jurisdiction.

For the reasons provided above, the decision of the district court is **AFFIRMED**.

As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and statute. *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 606 (6th Cir. 1998) (citations omitted). The burden of establishing jurisdiction and overcoming the presumption of the contrary rests upon the party asserting jurisdiction. *Douglas*, 150 F.3d at 606 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted)).

Estoppel is an equitable doctrine which a court may invoke to avoid injustice in particular cases. *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). However, "[n]otions of waiver and estoppel cannot confer on a court of the United States the jurisdiction to decide a claim." *Amco Constr. Co., v. Mississippi State Bldg. Comm'n*, 602 F.2d 730, 733-34 (5th Cir. 1979) (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 377, 57 L.Ed.2d 274, 98 S.Ct. 2396, 2405 n. 21 (1978)) (internal citations omitted). To order Defendant estopped from arguing justiciability on a non-justiciable claim would be to confer jurisdiction where it does not exist. It is on this basis that the lower court in this case rejected Plaintiff's estoppel argument.

If estoppel is available on the issue of jurisdiction, a more stringent standard applies in this case. "The Government may not be estopped on the same terms as any other litigant." *Heckler*, 467 U.S. at 60, 104 S.Ct. at 2224. "At the very minimum, some affirmative misconduct by a government agent is required as a basis of estoppel." *United States v. Guy*, 978 F.2d 934, 937 (6th Cir.1992) (citations omitted). The party attempting to estop the government bears a very heavy burden. *Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 976 F.2d 934, 937 (5th Cir. 1992); *see Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422, 110 S.Ct. 2465, 2470, 110 L.Ed.2d 387 (1990) (noting that the United States Supreme Court has reversed every finding of estoppel against the Government that the Court has reviewed). The Fifth Circuit requires that a litigant claiming

Tennessee Air National Guard; it was a management position, and its occupant would therefore be a 'company representative' of the Air National Guard and the greater Total Air Force." According to Plaintiff, Major Lonas selected "a male with far less qualifications." Plaintiff, contending that this decision was discrimination based on her gender and retaliation for filing the prior discrimination complaint, filed an administrative complaint.

On or about June 18, 1997, Plaintiff applied for a promotion to General Schedule 9/11 Logistics Management Specialist. That position involves being responsible for the transport of personnel, equipment, and supplies to and from deployment locations as well as maintenance of all personnel, equipment, and supplies while deployed. Major Wallace Houser, who held this position, considered it to be "inherently military in nature." Specifically, the Logistics Management Specialist is the Installation Deployment officer for the base and works on behalf of the Base Commander as the single point of contact for all deployment functions. Applicants for the position were directed to submit a military service resume as well as a resume describing work experience, training, awards, etc. In addition, an officer's appointment was required for the position as well as a top secret clearance in the Guard and a minimum of 24 months of experience in mobility programs or execution. According to Plaintiff, "a male with far less qualifications" was selected for this position. Plaintiff alleges that Defendant's failure to select her constitutes discrimination based on her gender and retaliation for having filed the prior charges of discrimination.

In addition, Plaintiff claims that her supervisors made derogatory remarks about female employees and sexually offensive remarks which created a hostile work environment. Plaintiff alleges to have heard Lt Col Wade state that females should not be in the military and that women should be at home where they belong. Plaintiff alleges that Lt Col Wade "continuously made sexually offensive and derogatory remarks about female employees in [Plaintiff's] presence." Plaintiff reported the conduct but contends that Defendant

dismissed her complaints and failed to take remedial action. Defendant denied Plaintiff's request for transfer.

Throughout this time, Plaintiff sought remedies through the civilian rather than the military system. This is understandable in light of misleading regulations and Defendant's response to Plaintiff's allegations and complaints.

The National Guard Regulation which sets forth the National Guard Civilian Discrimination Complaint System states that the regulation applies to "National Guard technician personnel," as well as other personnel. NGR (AR) 690-600 / NGR (AF) 40-1614. Under the sub-category of "Who May File a Complaint," this regulation provides that any National Guard technician who believes that he has been illegally discriminated against in an employment matter subject to the control of the National Guard may file a complaint. *Id.* However, the regulation later prohibits National Guard members from filing a complaint under this regulation if the alleged discrimination relates to the member's military status. *Id.*

The regulation establishing the National Guard Military Discrimination Complaint System provides that "[i]ndividuals who believe that they have been discriminated against in technician employment must process such complaints under [the regulation providing for the National Guard civilian discrimination complaint system]." NGR (AR) 600-22/NGR (AF) 30-3.

The regulation establishing the civilian system provides that the National Guard Bureau acts as the "Agency" within the meaning of 29 C.F.R. 1614 and therefore is responsible for the propriety of the acceptance and dismissal of complaints of discrimination. NGR (AR) 690-600/NGR (AF) 40-1614. Representatives in the Equal Opportunity Office accepted each of Plaintiff's complaints and investigated them. In a narrative report prepared in response to one of Plaintiff's complaints, Title VII and case law interpreting Title VII is cited and applied. In a final report issued in response to

---

department. Defendant cites *Mier*, which states that "a military transfer is nonjusticiable in part because 'transfer decisions go to the core of deployment of troops and overall strategies of preparedness.'" *Mier*, 57 F.3d at 750 (quoting *Sebra v. Neville*, 801 F.2d 1135, 1142 (9th Cir. 1986)).

In sum, under *Leistiko,* Plaintiff's claim is non-justiciable because she is a National Guard technician and, thus, her position is irreducibly military in nature. She must pursue military channels for relief. Even assuming, *arguendo*, that we ignore *Leistiko* as Plaintiff urges and ask whether the challenged actions are integrally military or within the military sphere, we conclude that Plaintiff's claim is military and thus non-justiciable. Plaintiff challenges an appraisal conducted during a period in which (1) her three immediate supervisors for her technician position and her Guard duty position were the same persons and were all military officers and (2) one appraisal was completed in review of both her civilian and her military positions. Regarding the failure to promote claims, the positions for which Plaintiff applied all had military components. The application procedures for those positions required a review of military service and qualifications. Plaintiff must pursue military channels.

### C.  Estoppel

Plaintiff also contends that Defendant should be estopped from arguing that her claims are non-justiciable challenges to military decisions because, when she attempted to seek redress through military channels, Defendant represented that the military did not have jurisdiction and that she needed to pursue civilian remedies. In reliance on this advice, Plaintiff abandoned the military channels and initiated a claim in the civilian court system. In her appellate brief, Plaintiff "requests that the Sixth Circuit use the Court's equity powers to sanction the [National Guard Bureau] and direct the NGB to find in the plaintiff's favor as to her discrimination complaints and award appropriate remedies." However, Plaintiff acknowledges that "an estoppel argument may not be feasible when subject matter jurisdiction is at issue."

because decisions regarding promotions are "one of the most obvious examples of a personnel action that is integrally related to the military's structure." *Mier*, 57 F.3d at 751. In *Gregory v. Widnall*, 153 F.3d 1071 (9th Cir. 1998), the plaintiff, a civilian technician in the Alaska Air National Guard, brought a Title VII claim based on claims including a failure to promote. In holding that the claims related to promotion were non-justiciable under Title VII, the Ninth Circuit quoted *Mier* for the propositions that "'Title VII applies to Guard technicians except when they challenge personnel actions integrally related to the military's unique structure'" and that "decisions relating to the 'promotion [or] suspension' of civilian employees of the National Guard, including technicians, are 'integrally related to the military's unique structure.'" *Id.* at 1074 (quoting *Mier*, 57 F.3d at 748, 751). In the present case, in all three of the promotions sought by Plaintiff, applicants were required to submit Military Qualification Information Forms and the applicants were evaluated based on, among other factors, their military skill level and military experience. We conclude that Plaintiff's argument, that she was denied promotions in her civilian capacity, is meritless.

Third, Defendant contends that Plaintiff may not use Title VII to challenge alleged harassment and hostile work environment. According to Defendant, this claim attacks the conduct of a superior officer, Lt Col Wade. Defendant cites *Mier*, which concluded that "[m]ilitary personnel cannot sue superior officers to recover damages for alleged constitutional violations because the 'relationship between enlisted military personnel and their superior officers . . . is at the heart of the necessarily unique structure of the Military Establishment.'" *Mier*, 57 F.3d at 749-50 (quoting *Chappell v. Wallace*, 462 U.S. 296, 300, 305, 103 S.Ct. 2362, 2366, 2368, 76 L.Ed.2d 586 (1983)). In response, Plaintiff argues that her complaint alleges that supervisors in her civilian capacity sexually harassed her.

Finally, Defendant asserts that Plaintiff may not use Title VII to challenge the refusal to transfer Plaintiff to another

Plaintiff's first complaint, the Director for Equal Opportunity, finding no discrimination, instructed Plaintiff that she could file a civil action in an appropriate U.S. District Court. The Area Director of the U.S. Equal Employment Opportunity Commission indicated that Plaintiff's complaint was properly filed pursuant to Title VII. On three separate occasions three different individuals informed Plaintiff that she must seek a remedy though the civilian system.

Plaintiff filed each of her four administrative complaints on forms provided by the Equal Opportunity Office of the National Guard Bureau. The form cited as authority "Public Law 92-261 amending 42 U.S.C. 2000e" and stated as its principal purpose: "[u]sed by National Guard technicians in filing a formal complaint of discrimination."

Defendant did not directly address these points in his brief but did respond to some of these issues in oral argument. Counsel addressed the regulation provision covering the military system which directed National Guard technicians to the civilian system. Conceding that the regulations were confusing, he explained that there are two categories of National Guard technicians, *i.e.*, single-status and dual-status technicians. Single-status technicians are full-time civilian, non-uniformed employees who can pursue remedies in the civilian system. Plaintiff is a dual-status technician. In response to Plaintiff's contention that officials and the regulations misled her as to the proper system for her complaint, defense counsel stated that for the last two out of the three years that Plaintiff has pursued her complaints, Defendant has offered Plaintiff the opportunity to file her charges in the military system. That opportunity remains available to Plaintiff.

Plaintiff filed a Complaint pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, in the United States District Court for the Eastern District of Tennessee. She alleged that Defendant discriminated against her on the basis of gender, that Defendant retaliated against her for filing administrative charges of discrimination, and

that she was sexually harassed. Defendant filed a motion to dismiss or, in the alternative, for summary judgment. The district court, treating Defendant's motion as one for summary judgment, granted Defendant's motion.

## II.  Analysis

### A.  Standard of Review

We review de novo the district court's grant of summary judgment. *See*, *e.g.*, *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

### B.  Justiciability

The first issue concerns whether Plaintiff, as a National Guard technician, may seek relief in a United States District Court under Title VII. The United States Supreme Court has held that soldiers could not bring a suit for damages in civilian court alleging racial discrimination by their superiors. *Coffman v. State of Michigan*, 120 F.3d 57 (6th Cir. 1997) (citing *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983)).

*Id.* at 1486. In sum, the *Mier* court offered this general statement on the issue of Title VII coverage of National Guard technicians:

> Because Guard technicians are in a hybrid job entailing both civilian and military aspects, we conclude that Title VII coverage of civilians employed by the military encompasses actions brought by Guard technicians except when the challenged conduct is integrally related to the military's unique structure.

*Mier*, 57 F.3d at 750.

Plaintiff distinguishes *Mier* by arguing that the plaintiff was suspended from civilian employment as a result of the denial of a military promotion. By contrast, Plaintiff alleges that her claims arise out of conduct that occurred solely in her civilian position.

Defendant cites *Mier* for the proposition that Plaintiff's claim is barred as it does implicate military concerns. First, Defendant asserts that Plaintiff may not use Title VII to challenge the decision of her superior officer regarding the rating on her performance appraisal. In 1994-1995, MSgt Kenneth Knight served as Plaintiff's immediate supervisor for both her technician and her Guard duties. Lt Col Wade served as Plaintiff's second-level supervisor for both her technician and Guard duties, and Col Knable served as Plaintiff's third-level supervisor in both chains-of-command. For the 1994-1995 appraisal rating cycle, Plaintiff received a single performance appraisal that covered both her technician and Guard duties. MSgt Knight was the appraiser, Lt Col Wade was the reviewing authority, and Col Knable was the approving official. In response, Plaintiff points to her complaint, which alleges that her supervisor in her civilian position downgraded her appraisal because of her gender.

Second, Defendant asserts that Plaintiff may not use Title VII to challenge the decisions not to promote her to the positions of Supervisory Accounting Technician, Supply Management Officer, or Logistics Management Specialist

structure." *Id.* at 749. The court also offered some examples of lawsuits that would involve personnel actions integrally related to the military's unique structure, such as suits by an enlisted military personnel against a superior officer to recover damages for alleged constitutional violations; a Guard technician's challenge to a military transfer; a Guard technician's challenge to discharge by the Guard and termination from technician employment; suits challenging enlistment procedures; suits involving concerns regarding military hierarchy and discipline; and suits, as was the case in *Mier*, involving promotion decisions. *Id.* at 750-51 (citations omitted).

Furthermore, the *Mier* court also cited to cases in which personnel actions were not integrally related to the military's unique structure. In *Bledsoe v. Webb*, 839 F.2d 1357 (9th Cir. 1988), a female civilian employee was responding to a squadron request for her technical services aboard a Naval aircraft carrier when the commanding officer of the vessel refused to allow her to embark, work, or reside on the vessel, reasoning that berthing was not available for female civilian employees. *Id.* at 1358. The employee challenged the refusal, filing a Title VII claim in United States district court. *Id.* The employee was neither a member of the armed forces nor an applicant for enlistment in the armed forces. *Id.* at 1359. The Ninth Circuit allowed the claim to proceed, noting that the plaintiff was not a member of the armed services, that no policy or function was implicated which was "unmistakably military in nature," and that the military officer's decision in this case did not readily lend itself to characterization as "'inherently military.'" *Id.* at 1360.

The *Mier* court also referred to *Lutz v. Sec'y of the Air Force*, 944 F.2d 1477, 1478 (9th Cir. 1991), in which a former major in the United States Air Force sued the Air Force and three sergeants who broke into her office after hours, opened her private mail, and disseminated it in an attempt to ruin her reputation. In holding that intra-military immunity did not apply to the claims, the *Lutz* court reasoned that the conduct alleged was not incident to military service.

The special status of the military has required, the Constitution has contemplated, Congress has created, and this court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel. *Chappell*, 462 U.S. at 303-04, 103 S.Ct. at 2367. The Court noted that Congress has plenary authority over the military, and has exercised that authority to establish statutes regulating military life and to provide for a comprehensive internal system of justice. That system provides for the review and remedy of complaints and grievances of uniformed members of the armed forces. *Id.* at 301-03, 103 S.Ct. at 2366-67.

\*   \*   \*

Consistent with the reasoning in *Chappell*, courts of appeals have consistently refused to extend statutory remedies available to civilians to uniformed members of the armed forces absent a clear direction from Congress to do so. Thus, uniformed members of the armed forces have no remedy under Title VII of the Civil Rights Act of 1964.

*Coffman*, 120 F.3d at 59.

42 U.S.C. § 2000e-16(a) precludes the military departments from engaging in acts of employment discrimination. The Equal Employment Opportunity Commission and the circuits that have considered this statute have interpreted it to apply only to suits by civilian employees of the military departments, and not members of the armed forces. *Brown v. United States*, 227 F.3d 295, 298 (5th Cir. 2000). Thus, we must resolve whether Plaintiff constitutes a civilian employee and thus must seek relief in a civilian court under § 2000e-16(a) or whether she is a member of the armed forces and must pursue relief in the military system.

Sixth Circuit precedent supports the proposition that National Guard technicians occupy military positions. In *Leistiko v. Stone*, 134 F.3d 817, 818 (6th Cir. 1998), Leistiko was employed as a National Guard Supervisory Aircraft Pilot,

a federal civilian technical position subject to the provisions of 32 U.S.C. § 709. This technician position was a hybrid military-civilian position that required Leistiko to maintain dual status as a member of the Ohio National Guard and as a federal civilian technician. *Leistiko v. Sec'y of the Army*, 922 F.Supp. 66, 69 (N.D. Ohio 1996). Additionally, Leistiko was required to maintain status as a "'rated aviator.'" *Id.* During an Ohio National Guard helicopter flight, Leistiko suffered an apparent grand mal seizure. *Id.* Due to medical concerns related to that incident, an army doctor recommended that Leistiko be medically disqualified from further aviation service. *Leistiko*, 134 F.3d at 819. In response, the National Guard Bureau removed Leistiko from flight status. *Id.* Leistiko then received a notice that his employment as a federal civilian technician would be terminated for failure to meet a requirement of his position, *i.e.*, that he remained on flight status. *Id.*

Leistiko filed suit alleging, among other claims, that the Secretary of the Army discriminated against him in violation of the Rehabilitation Act. *Id.* The district court acknowledged that the Rehabilitation Act applied to the Department of the Army. *Leistiko*, 922 F.Supp. at 75 (citing 29 U.S.C. § 794a(a)(1), 42 U.S.C. § 2000e-16(a)). However, the court also recognized that "every Court of Appeals that has construed this section in a military context has held that it creates a right of action only in civilian, not military, employees of the armed forces." *Id.* (citations omitted). This court upheld the district court's grant of summary judgment to the Secretary of the Army and specifically voiced approval for the lower court's conclusions.

[A]s the district court correctly held, the Rehabilitation Act has no application to employees occupying hybrid positions that are 'irreducibly military in nature.' *Leistiko*, 922 F.Supp. at 75. The district court was correct in observing that '[e]very court having occasion closely to consider the capacity of National Guard technicians has determined that capacity to be irreducibly military in nature,' *id.* at 73 (citations omitted), and we

superior relationship and she is challenging promotion decisions which are central to the military's hierarchy.

The Ninth Circuit has also analyzed the civilian-versus-military issue by focusing on whether the personnel action taken was integrally related to the military's structure. In *Mier v. Owens*, 57 F.3d 747, 748 (9th Cir. 1995), *cert. denied sub nom.*, *Mier v. Van Dyke*, 517 U.S. 1103, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996), the plaintiff was a civil service technician employed in the Arizona Army National Guard. He served in a civilian capacity as a full-time supply management officer and in a military capacity as a commissioned officer not on active duty. *Id.* To maintain his civilian position, the plaintiff was required to be a member of the National Guard and hold the commensurate military position. *Id.* The plaintiff filed a complaint alleging that the adjutant of the Arizona Army National Guard and the Secretary of the Army discriminated against him in violation of Title VII. *Id.* According to the plaintiff, the defendants discriminatorily denied him military promotions and suspended him from civilian employment as a result of the denial of the requisite military promotions. *Id.*

The Ninth Circuit held that the discriminatory actions were personnel actions integrally related to the military's structure. *Id.* at 751. The *Mier* court reasoned that

[m]ilitary promotion is one of the most obvious examples of a personnel action that is integrally related to the military's structure. Decisions regarding who is promoted and why are central to maintenance of the military's hierarchy. Title VII does not allow this court to review decisions regarding the military promotion of individuals serving as Guard technicians. Because suspension from civilian promotion resulted from denial of the military promotion, the suspension likewise cannot be reviewed.

*Id.* Concerning personnel actions in general, the court stated that "[c]ourts regularly decline to hear lawsuits involving personnel actions integrally related to the military's unique

were discriminatory and retaliatory. *Id.* The Fifth Circuit determined that 42 U.S.C. § 2000e-16 and 29 C.F.R. 1614.103(d)(1) governed the case and acknowledged that § 2000e-16 applied only to suits by civilian employees of the military departments and not to suits by members of the armed forces. *Id.* at 298. The court concluded that claims arising purely from an ART's civilian position are provided for under Title VII while claims that originate from an ART's military status are not cognizable. *Id.* at 299. Thus, employment discrimination claims involving ARTs, who are required to maintain both a civilian position and a military position, must be categorized as either arising from the position as a civilian employee of a military department or the position as a uniformed service member. *Id.* at 299.

The appellate court concluded that Brown's discrimination claim constituted a claim made by a member of the "uniformed services." *Id.* The court reasoned that Brown sought review of actions taken by the military that formed the basis of his military discharge and that while these actions had a civilian component, as his discharge made him ineligible for his civilian position, they were actions taken within the military sphere. *Id.*

In *Leistiko*, we upheld the grant of summary judgment because we found the position of a National Guard technician to be irreducibly military in nature. The Fifth Circuit in *Brown* suggests that the National Guard technician position is not inherently military, and thus, a court may need to determine whether a plaintiff seeks review of actions that are civilian or military in nature. To some extent, Plaintiff, while not citing *Brown* in her brief, adopts the approach taken in *Brown*, arguing that her civilian position and military position are separate and the challenged conduct in this case involves her civilian position. Plaintiff contends that none of her claims relating to promotions, sexual harassment, or retaliation are related to her weekend military service. Defendant responds that Plaintiff is challenging conduct of superior officers which infringes on the military subordinate-

are satisfied that Col. Leistiko's technician job was of this nature.

*Leistiko*, 134 F.3d at 820-21.

In the case at hand, Plaintiff attempts to distinguish *Leistiko* by emphasizing that Leistiko's dismissal from his civilian employment was precipitated by a military decision. While that distinction may be accurate, Plaintiff ignores the unambiguous statements made in *Leistiko* that the positions of National Guard technicians are "irreducibly military in nature." In affirming the grant of summary judgment, this court did not discuss the facts of the underlying employment action taken which precipitated the suit. Rather, we simply confirmed that National Guard technician positions are irreducibly military in nature and that the Rehabilitation Act does not apply to hybrid positions that are irreducibly military in nature.

Since the ruling in *Leistiko*, this court has indicated its approval of that opinion on at least two occasions. In *Bradley v. Stump*, 149 F.3d 1182, 1998 WL 385903 (6th Cir. 1998) (unpublished), Bradley held dual status in the Michigan Air National Guard and the United States Air National Guard. As a base commander during the week, Bradley was considered a grade GM-15 federal technician pursuant to 32 U.S.C. § 709. *Bradley v. Stump*, 971 F.Supp. 1149, 1151 (W.D. Mich. 1997). When participating in active state duty on weekends, during annual training, or on special call up duty, Bradley served both as base commander and as commander of the 110th Fighter Group, a unit of the Michigan Air National Guard. *Id.* Bradley's wife had been employed on the base since 1988. *Bradley*, 1998 WL 385903 **1.

During a performance review, Bradley was informed that either he or his wife would have to leave as it was inappropriate for his wife to remain employed on the base within Bradley's ultimate control. *Id.* Bradley filed an action alleging, among other claims, a violation of his constitutional rights under 42 U.S.C. §§1983, 1985. *Id.* The district court dismissed the suit as non-justiciable, stating that

Guard technicians' challenges to discharge by the Guard and termination from technician employment are nonjusticiable because judicial review would seriously impede the military in performance of its vital duties.

*Bradley*, 971 F.Supp. at 1156 (quoting *Christoffersen v. Washington State Air Nat'l Guard*, 855 F.2d 1437, 1444 (9th Cir. 1988), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989)). On appeal, this court referred to *Leistiko* in affirming the dismissal. *Bradley*, 1998 WL 385903 **3. This court held that

[t]he National Guard is 'irreducibly military.' An executive decision by an adjutant general to relieve a Guard officer of command is simply an adverse personnel action. Damages are not available for adverse personnel actions in the military.

*Id.*

Plaintiff attempts to distinguish *Bradley* by offering that Bradley's position as a base commander, level GM-15, was "'irreducibly military.'" However, this court did not conclude that only the base commander position was "irreducibly military," but that the National Guard as a whole was "irreducibly military." *Id.*

In *Hoffman v. Stump*, 172 F.3d 48, 1998 WL 869972 (6th Cir. 1998) (unpublished), Hoffman was a member of the United States National Guard and the Michigan National Guard. While Hoffman was on federal National Guard duty, an incident occurred which resulted in discipline. *Id.* at **1-2. During an Eagle Scout camping trip, Hoffman found a wallet, removed the money, turned the wallet in to the post office, and then took steps to cover up his actions. *Id.* at **1.

Hoffman initiated a suit challenging, on state law and constitutional grounds, the National Guard's disciplinary decision. *Id.* at **2. The district court dismissed the constitutional challenges as non-justiciable because they challenged an internal military discipline decision. *Id.* This

court affirmed, citing *Leistiko* and *Bradley* as examples, and stating that "since *Chappell*, this Court has dismissed officers' federal claims when the officers challenge internal military disciplinary or personnel decisions." *Id.* at **4.

Plaintiff argues that Hoffman was on military duty at the time of the incident which gave rise to his lawsuit. Hoffman did not dispute the fact that his federal claims required the court to review an internal military discipline decision. While the facts of *Hoffman* are distinguishable from the present case, *Hoffman* is relevant to the extent that we cited *Leistiko* and *Bradley* as holding that National Guard technicians are irreducibly military in nature.

The Fifth Circuit, deciding a case involving an Air Reserve Technician, examined the facts of the challenged employment actions and concluded that the actions were military in nature. *Brown v. United States*, 227 F.3d 295 (5th Cir. 2000). The plaintiff, Brown, served as a full-time Air Reserve Technician ("ART") for the United States Air Force. *Id.* at 297. Because the ART position required that Brown also serve in the military reserves, Brown served as a Captain in the Air Force Reserve. *Id.* While serving as an ART, Brown filed an informal grievance. *Id.* After the grievance was closed, Brown was transferred from his civilian position twice. *Id.* During this same period of time, Brown's commanding officer ordered him to active duty and required him to submit to a psychiatric evaluation which revealed that Brown suffered from a severe personality disorder. *Id.* The evaluation concluded that despite this disorder Brown was qualified for worldwide duty. *Id.* Subsequently, Brown was charged with misconduct and substandard performance and was honorably discharged from the Air Force Reserve. *Id.* After his discharge, Brown was relieved of his civilian ART responsibilities because he failed to meet the position's requirements, *i.e.*, maintaining reserved duty status in the Air Force.

Brown sued the United States Air Force, alleging that the events leading up to his discharge and his actual discharge