RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0285p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---



FEDERAL LABOR RELATIONS AUTHORITY,

*Petitioner*,

*v.*

MICHIGAN ARMY NATIONAL GUARD,

*Respondent*.

No. 17-3128

---

On Application for Enforcement of an
Order of the Federal Labor Relations Authority;
No. CH-CA-14-0475.

Argued: October 4, 2017

Decided and Filed: December 18, 2017

Before: CLAY, ROGERS, and SUTTON, Circuit Judges.

---

## COUNSEL

**ARGUED:** Zachary R. Henige, FEDERAL LABOR RELATIONS AUTHORITY, Washington, D.C., for Petitioner. Tyce R. Walters, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Zachary R. Henige, Fred B. Jacob, Stephanie J. Fouse, FEDERAL LABOR RELATIONS AUTHORITY, Washington, D.C., for Petitioner. Tyce R. Walters, H. Thomas Byron III, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. William R. Kudrle, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, Washington, D.C., for Amicus Curiae.

ROGERS, J., delivered the opinion of the court in which SUTTON, J., joined, and CLAY, J., joined in part. CLAY, J. (pp. 14–16), delivered a separate opinion concurring in part and dissenting from Part III of the majority opinion.

---

**OPINION**

---

ROGERS, Circuit Judge.　This dispute concerns the federal labor rights of National Guard technicians, who are covered by the Federal Service Labor-Management Relations Statute ("FSLMRS"), 5 U.S.C. §§ 7101–7135, but who may be disciplined by the state Guard generally without federal review.　During administrative proceedings related to the termination of two such technicians, the Michigan Army National Guard (the "Guard") sent a letter to the employees' union representative that could be read as temporarily forbidding all private communication between union representatives and employees of the Guard.　Before us for enforcement is a determination by the Federal Labor Relations Authority ("FLRA") that this letter violated federal labor law rights under the FSLMRS.　The parties essentially argue past each other.　The Guard argues that the letter—interpreted as a prohibition limited to *ex parte* termination-related contacts with potential employee witnesses—is intertwined with the Guard's termination process and accordingly not reviewable by the FLRA.　The FLRA argues that the letter—instead interpreted as a wholesale (albeit temporary) prohibition on contact by all Guard employees with union representatives regardless of purpose—violates technicians' FSLMRS rights.　Accepting the FLRA's arguable but somewhat implausible interpretation of the letter under deferential substantial-evidence review, the letter did violate the FSLMRS and was within the purview of the FLRA.　So holding, we need not address the Guard's various jurisdictional and merits arguments regarding what the FLRA did *not* find to be before it: a temporary prohibition limited to *ex parte* witness contacts related to the technician-termination proceeding.　While it is accordingly proper to enforce the FLRA's order, a modification to the proposed order is required to conform it more precisely to the basis of the FLRA's decision.

**I.**

This case arises from the Guard's decision to terminate two "dual-status" technicians. Under federal law, dual-status technicians occupy a "hybrid military-civilian position." *Fisher v. Peters*, 249 F.3d 433, 438 (6th Cir. 2001).　They are military employees in that they must be members of the National Guard, hold a military grade, and wear an appropriate military uniform

while performing military duties. 32 U.S.C. § 709(b). But they are also "Federal civilian employee[s]" who are "assigned to a civilian position." 10 U.S.C. § 10216(a). As a result, dual-status technicians are "afforded the benefits and rights generally provided for federal employees in the civil service," *N.J. Air Nat'l Guard v. FLRA*, 677 F.2d 276, 279 (3d Cir. 1982), including rights under the FSLMRS. *See id.* at 284; *see also Lipscomb v. FLRA*, 333 F.3d 611, 620 (5th Cir. 2003).

In February 2014, the Guard concluded an investigation into misconduct at its training base in Grayling, Michigan. Based on its findings, the Guard terminated two dual-status technicians. The terminated technicians appealed this decision through the Guard's internal administrative process, in which they were represented by their union, the Laborers' International Union of North America, Local 2132, AFL-CIO (the "union").

On March 12, 2014, in connection with the administrative appeal, the Guard's deputy general counsel (and prosecuting attorney against the technicians), Captain David Bedells, sent a letter to the technicians' union representative, Ben Banchs. The letter read as follows:

> Please be advised that this office will represent the interests of [the Guard] at the administrative hearing requested by your client. Accordingly, any and all communications with employees or representatives of [the Guard] regarding this matter should be directed to this office. Any communications with employees or representatives of [the Guard] outside the presence of a[] [Guard] attorney are improper until such time as the administrative hearing examiner determines that further pre-hearing interviews are necessary.

Banchs responded to this letter by email on March 17, claiming that the Guard had "no legal authority to regulate communications between bargaining unit employees . . . and the Union concerning this or any other employment matter." Banchs' email also expressed his concern that the Guard's directive would prohibit the terminated technicians from contacting any union employees, including "Family Services, the Human Resources Office, the Chaplain, or even an [Inspector General]."

On March 20, Captain Bedells responded with another letter. He disputed Banchs' broad interpretation of the original letter, arguing that its "express reference to 'regarding this matter'" indicated that its scope was limited to "communications [that] concern matters related to the

subject of the 'administrative hearing requested by your client(s).'" Captain Bedells also contended that "no reasonable interpretation" of his first letter would suggest that the technicians were "prohibited from 'making contact with Family Services, the Human Resources Office, the Chaplain or even the [Inspector General].'" Finally, the second letter also made clear that the directive from the original letter "remain[ed] in place."

The union responded by filing an unfair-labor-practice charge with the FLRA's Chicago Regional Office, which subsequently issued a complaint. On October 23, 2015, an Administrative Law Judge for the FLRA granted the motion for summary judgment brought by the FLRA's General Counsel, determining that the Guard committed an unfair labor practice in violation of the FSLMRS. The Guard then filed exceptions to the ALJ's decision. The FLRA denied these exceptions, relying on its interpretation of Captain Bedells' original letter as a "sweeping command . . . [that] prohibited private communications with *all* bargaining-unit employees." *Mich. Army Nat'l Guard and Laborers' Int'l Union of N. Am., Local 2132, AFL-CIO*, 69 FLRA 393, 397 (May 25, 2016) (emphasis in original). The FLRA ordered the Guard to cease and desist from "[p]rohibiting private communication between bargaining-unit employees and their Union representatives," and to post notice of its violation. *Id.* The Guard refused to comply. The FLRA then petitioned for enforcement of its order in the United States Court of Appeals for the Fourth Circuit pursuant to 5 U.S.C. § 7123(b). On February 7, 2017, the Fourth Circuit transferred the case to this court.

## II.

### A.

Our analysis ultimately depends on the scope of the letter. Here, the FLRA's interpretation of the letter as a "sweeping command . . . [that] prohibited private communications with *all* bargaining unit employees" is supported by substantial evidence. On its face, the letter purports to forbid "[a]ny communications with employees or representatives of [the Guard] outside the presence of [a Guard] attorney . . . until such time as the administrative hearing examiner determines that further pre-hearing interviews are necessary." The letter's plain text

thus appears to ban temporarily all private union-employee communication, regardless of subject matter.

The letter's scope is a question of fact.  Accordingly, the FLRA's interpretation of the letter's scope is conclusive if it is "supported by substantial evidence on the record considered as a whole."  5 U.S.C. § 7123(c).  The Guard argues that the sentence of the letter relied upon by the FLRA must be read in conjunction with the preceding sentence, which states that "all communications with employees or representatives of [the Guard] *regarding this matter* should be directed to this office" (emphasis added).  According to the Guard, this narrowed the letter's scope, such that it only prohibited private union-employee communications about the subject matter of the termination proceedings, and even then only temporarily.  Therefore, says the Guard, the FLRA drastically misinterpreted the letter's scope when it characterized the letter as a "sweeping command" that "extended far beyond the scope of the internal administrative hearings concerning the technicians' misconduct and prohibited private communications with *all* bargaining-unit employees."  *Mich. Army Nat'l Guard*, 69 FLRA at 397.

However plausible the Guard's argument may be, it was on balance reasonable, under the substantial evidence standard applicable to this case, for the FLRA to rely on the explicit language of the letter, particularly in light of the way it was understood by the recipient. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  In making this determination, we "consider the evidence contrary to the [agency's] conclusions, but may not conduct *de novo* review of the record."  *Turnbull Cone Baking Co. of Tenn. v. NLRB*, 778 F.2d 292, 295 (6th Cir. 1985).  If the evidence in the record reasonably supports more than one resolution of a question of fact, we will not disturb the FLRA's "choice between two fairly conflicting views."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *W.F. Bolin Co. v. NLRB*, 70 F.3d 863, 870 (6th Cir. 1995).

Here, the plain text of the letter is sufficient evidence to support the FLRA's broad interpretation.  As explained below, in view of the scope attributed to the letter by the FLRA, the

letter does not fall outside of FLRA jurisdiction, and substantial evidence supports the finding of a violation of the FSLMRS.

**B.**

The Guard's first argument is that the National Guard Technicians Act of 1968 precludes the FLRA from entertaining challenges to the Guard's technician-termination procedures. This argument fails because the Guard's broad ban on *all* private union-employee communications, including those wholly unrelated to the subject matter of the termination proceedings, cannot fairly be described as a regulation of the termination proceedings, and therefore falls outside the scope of the Technicians Act.

Congress enacted the Technicians Act to accommodate the competing interests created by the National Guard's "unique position in the federal structure." *N.J. Air Nat'l Guard*, 677 F.2d at 278. While each state unit of the National Guard is "a state agency, under state authority and control," the "activity, makeup, and function of the Guard is provided for, to a large extent, by federal law." *Id.* at 279. The Technicians Act recognizes the federal nature of the National Guard by granting dual-status technicians "the benefits and rights generally provided for federal employees in the civil service." *Id.* At the same time, however, it reserves to state adjutants general broad authority to make personnel decisions regarding technicians. In particular, the Act provides that "a technician may, at any time, be separated from his technician employment for cause by the adjutant general of the jurisdiction concerned." 32 U.S.C. § 709(f)(2). It also states that "an adverse action involving discharge from technician employment . . . shall be accomplished by the adjutant general," *id*. § 709(f)(3), and prohibits any "right of appeal" in a technician-termination proceeding from extending beyond the adjutant general, *id*. § 709(f)(4). This reservation of authority to state adjutants general "can be viewed as a virtual quid pro quo for the [Act's] grant of federal employee status." *N.J. Air Nat'l Guard*, 677 F.2d at 284.

The Guard contends that § 709(f) places its technician-termination procedures in the unreviewable discretion of the adjutant general, and therefore that the FLRA may not review those procedures to determine whether they comport with federal labor law. However, the

Technicians Act will only insulate the Guard's communications ban from review if the ban *was* in fact a regulation of termination proceedings. If it was not, then it falls outside the scope of the adjutant general's exclusive authority outlined in the Technicians Act. Assuming as we do that the Guard's letter was a "sweeping command" that proscribed private communications between the union and "*all* bargaining-unit employees," *Mich. Army Nat'l Guard*, 69 FLRA at 397, the FLRA's exercise of jurisdiction did not violate the Technicians Act. It is true that "the Technicians Act reserves exclusive review of personnel actions affecting technicians for the state adjutants general." *Am. Fed'n of Gov't Emps., Local 3936, AFL-CIO v. FLRA*, 239 F.3d 66, 70 (1st Cir. 2001). However, the Guard's letter falls outside this reservation of authority because it extends beyond the regulation of technician-termination proceedings. As interpreted by the FLRA, the letter bans *all* union-employee communications, including those completely unrelated to the termination proceedings. Such a blanket ban on private union-employee communications cannot fairly be understood as regulating the termination proceedings, because it would also prevent employees from discussing unrelated concerns with their union representatives. Were it otherwise, the simple fact that the Guard had initiated disciplinary proceedings against a technician would permit it to temporarily proscribe all protected union-employee communications, including those having nothing to do with the proceedings, and which thus would be unlikely to affect the proceedings' outcome. The Technicians Act does not require such an extraordinary result.

This case does not require us to decide whether the Technicians Act would preclude review of a more narrowly tailored directive. The Guard asserts that its letter was a "key procedural safeguard" intended to protect its legitimate interest in preventing advocates from engaging in "improper contact with potential witnesses." *Cf.* Model Rule of Professional Conduct 4.2 cmt. 7 (prohibiting lawyers from contacting certain employees of a represented organization); Model Rule of Professional Conduct 3.4(b), (f) (prohibiting lawyers from "counsel[ing] or assist[ing] a witness to testify falsely" and from "request[ing] a person other than a client to refrain from voluntarily giving relevant information to another party"). The Guard may well have an interest that would justify some regulation of private union-witness contact before a termination proceeding. But because the FLRA found that the letter in this case was not so tailored, we need not address the question.

Cases cited by the Guard are distinguishable. *American Federation of Government Employees, Local 3936, AFL-CIO v. FLRA*, 239 F.3d 66 (1st Cir. 2001), for instance, was a direct challenge to the adjutant general's termination decision, which is not the case here. Similarly distinguishable are cases holding that a state National Guard is not obligated to bargain over union proposals to submit technician personnel decisions to binding arbitration. *See N.J. Air Nat'l Guard*, 677 F.2d at 282; *Ind. Air Nat'l Guard, Hulman Field, Terre Haute, Ind. v. FLRA*, 712 F.2d 1187, 1191 (7th Cir. 1983); *State of Neb., Military Dep't, Office of the Adjutant Gen. v. FLRA*, 705 F.2d 945, 952 (8th Cir. 1983); *Cal. Nat'l Guard v. FLRA*, 697 F.2d 874, 879 (9th Cir. 1983). These cases rest on the idea that the personnel decisions of state adjutants general cannot be submitted to binding arbitration, because to do so would effectively be to permit an appeal from the adjutant general's decision in plain violation of § 709(f)(4). *See N.J. Air Nat'l Guard*, 677 F.2d at 282. That is not the case here. The Guard also cites a D.C. Circuit opinion for the proposition that the FLRA may not review "a decision that was 'indispensable' or 'integral' to, or 'inextricably intertwined' with, [an] unreviewable agency action." *Fla. Health Scis. Ctr., Inc. v. Sec'y of Health and Human Servs.*, 830 F.3d 515, 519 (D.C. Cir. 2016). However relevant this decision might have been to the case of a narrowly tailored letter, it says little about a letter with the "sweeping" nature that the FLRA found in this case.

Finally, the Guard makes a more general argument that the court should exercise caution before "intruding on the military authority and personnel decisions of state adjutants general." In support, the Guard points to our previous observation that dual-status technicians operate in a capacity that is "irreducibly military in nature." *Fisher v. Peters*, 249 F.3d 433, 439 (6th Cir. 2001) (quoting *Leistiko v. Stone*, 134 F.3d 817, 821 (6th Cir. 1998)). But *Fisher* and *Leistiko* were very different from this case. Both involved challenges to an adjutant general's termination decision, in *Fisher* under Title VII and in *Leistiko* under the Rehabilitation Act. *See Fisher*, 249 F.3d at 437; *Leistiko*, 134 F.3d at 820–21. These cases hold that because dual-status National Guard technician positions are irreducibly military, Title VII and the Rehabilitation Act simply do not apply to such positions. *See Fisher*, 249 F.3d at 439, 443. A parallel conclusion would be that FSLMRS protections do not apply to dual-status Guard technicians, but that is clearly not the case. *See N.J. Air Nat'l Guard*, 677 F.2d at 286 ("[U]nder the Labor-Management Act, the Guard still must engage in collective bargaining with a union representing

Guard technicians . . . ."); *Lipscomb*, 333 F.3d at 620. Assuming that the FSLMRS provides labor rights of any sort to dual-status technicians, which it clearly does, it is hard to see how the basic ability of union members to talk with union officers could not be protected. Military status, in short, does not flatly deprive dual-status technicians of their statutory right "to form, join, or assist any labor organization, . . . freely and without fear of penalty or reprisal," 5 U.S.C. § 7102.

**C.**

The Guard's second argument is that the FLRA was precluded from exercising jurisdiction over this case by 5 U.S.C. § 7116(d), which provides that "[i]ssues which can properly be raised under an appeals procedure may not be raised as unfair labor practices." The Guard contends that, because the union could have challenged the communications ban in the administrative appeal, § 7116(d) prohibits the union from challenging the ban via an unfair-labor-practice complaint. This argument is also unpersuasive in the context of an all-encompassing interpretation of the letter.

The FLRA has interpreted § 7116(d) to preclude it from exercising jurisdiction when "the factual predicate and the legal theory underlying an unfair labor practice complaint and a[n] . . . appeal are the same." *Wildberger v. FLRA*, 132 F.3d 784, 787 (D.C. Cir. 1998). The Guard argues that the union could have attacked the communications ban in the Guard's internal administrative proceedings on a similar legal theory to the one it raised before the FLRA—namely, that the ban was overbroad in light of the Guard's legitimate need to limit *ex parte* communications. However, this argument fails because the union advanced legal theories before the FLRA that are different from those it would have been able to argue in the administrative appeal. Before the FLRA, the union contended that the ban violated the FSLMRS. Before the hearing examiner, by contrast, the union would have been limited to arguing that the Guard misapplied its own personnel regulations. These are different legal arguments that present different issues. Whether the Guard complied with its own personnel regulations is not related to the separate question of whether its actions violated federal labor law. *Wildberger*, 132 F.3d at 794, analogously held that § 7116(d) did not preclude the FLRA from exercising jurisdiction over an unfair-labor-practice claim when the employee's prior appeal before the Merit Systems Protection Board ("MSPB") did not involve the same legal theory. The fact that one legal

argument was open to the union in the administrative proceedings did not foreclose it from pursuing a different argument before the FLRA.

In response, the Guard argues that it is immaterial that the union would have had to rely on different sources of law in the FLRA proceedings and the administrative appeal. It bases this argument on *Department of Commerce, Bureau of the Census v. FLRA*, 976 F.2d 882 (4th Cir. 1992), but this reliance is misplaced. In that case, an employee of the Bureau of the Census challenged his termination both before the MSPB and via an unfair-labor-practice complaint. In holding that § 7116(d) denied jurisdiction to the FLRA, the court rejected the FLRA's argument that jurisdiction was appropriate because the employee relied on different statutory provisions before the FLRA and the MSPB. The Guard highlights the following statement of the court:

> We do not find dispositive the fact that [the employee] cited one statutory provision for his [unfair-labor-practice] complaint and another for his MSPB procedure. All that this reveals is the obvious: that the statutory provisions governing the adjudication of [unfair labor practices] before the FLRA and grievances under the MSPB procedure are different.

*Department of Commerce*, 976 F.2d at 889. However, the court's very next sentence demonstrates why *Department of Commerce* is different from this case: "The fact that the separate forums are governed by separate statutory provisions cannot change the essential fact that *the legal arguments [the employee] presented to each body were substantially the same.*" *Id.* (emphasis added). The same cannot be said here. As discussed above, the union's legal arguments before the FLRA were not "substantially the same" as those it could have made in the Guard's internal proceeding. Accordingly, *Department of Commerce* is not on point.

**D.**

The Guard also argues that the FLRA's finding of an unfair labor practice is not supported by substantial evidence. This argument is basically a reprise of the Guard's argument that the letter should be interpreted narrowly. For the reasons given in part A, *supra*, the FLRA's finding regarding the sweeping scope of the letter in this case is supported by substantial evidence.

**III.**

In conclusion, our affirmance of the FLRA's order is based on the FLRA's finding that the letter swept very broadly. The FLRA's order can, however, be read to prohibit what the FLRA did not find before it: a more narrowly tailored directive. At oral argument, the Guard asked in the alternative that we modify the FLRA's order to make clear that it is predicated on the FLRA's interpretation of the letter as a "sweeping command" that "prohibited private communications with *all* bargaining-unit employees." *Mich. Army Nat'l Guard*, 69 FLRA at 397. We have the explicit statutory power to do so: "Upon the filing of the petition, the court . . . may make and enter a decree affirming and enforcing, *modifying and enforcing as so modified*, or setting aside in whole or in part the order of the Authority." 5 U.S.C. § 7123(c) (emphasis added).

Because the FLRA's order can be read more broadly than the reasoning of its decision would support, it is appropriate to modify the order so as to clarify that it does not provide broader relief than the FLRA's findings about the scope of the letter support. Accordingly, we modify the FLRA's order as follows (additions are indicated by bolded text and deletions are indicated by strikethrough):

Pursuant to § 2423.41(c) of the Authority's Regulations and § 7118 of the Statute, The Respondent shall:

1. Cease and desist from:
    (a) **Making sweeping directives that prohibit** private communication between **all** bargaining-unit employees and their Union representatives.
    (b) In any like or related manner, interfering with, restraining, or coercing bargaining-unit employees in the exercise of their rights assured by the Statute.

2. Take the following affirmative actions in order to effectuate the purposes and policies of the Statute:
    (a) Post at its facilities where bargaining-unit employees represented by the Union are located, copies of the attached notice on forms to be furnished by the FLRA. Upon receipt of such forms, they shall be signed by the Adjutant General, and shall be posted and maintained for sixty consecutive days thereafter, in conspicuous places, including all bulletin boards and other places where notices to employees are customarily

posted. Reasonable steps shall be taken to ensure that such notices are not altered, defaced, or covered by any other material.

(b) In addition to physical posting of paper notices, notices shall be distributed electronically, on the same day, as posting of the physical notices, such as by email, posting on an intranet or internet site, or other electronic means, if such are customarily used to communicate with bargaining-unit employees.

(c) Pursuant to § 2423.41(e) of the Authority's Regulations, notify the Regional Director, Chicago Region, FLRA, in writing, within thirty days from the date of this Order, as to the steps taken to comply.

NOTICE TO ALL EMPLOYEES
POSTED BY ORDER OF THE FEDERAL LABOR RELATIONS AUTHORITY

The Federal Labor Relations Authority (FLRA) has found that the Michigan Army National Guard violated the Federal Service Labor-Management Relations Statute (the Statute), and has ordered us to post and abide by this notice.

WE HEREBY NOTIFY OUR EMPLOYEES THAT:

The Statute gives employees of the Michigan Army National Guard the following rights:

To form, join, or assist any labor organization;

To act for a labor organization in the capacity of a representative;

To present the views of the labor organization, as a representative of a labor organization, to heads of agencies and other officials of the executive branch of the Government, Congress or other appropriate authorities;

To engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under the Statute; and

To refrain from any of the activities set forth above, freely and without fear of penalty or reprisal.

The Michigan Army National Guard will not violate any of these rights. More specifically:

WE AFFIRM that bargaining-unit employees have the right to privately communicate with their union representatives about their conditions of employment~~, including disciplinary matters~~.

WE WILL NOT require that **all** communications **during a certain period** between union representatives of the Laborers' International Union of North America, Local 2132, AFL-CIO and bargaining-unit employees be conducted in the presence of an agency attorney.

WE WILL NOT in any like or related manner, interfere with, restrain, or coerce bargaining-unit employees in the exercise of their rights assured by the Statute.

Michigan Army National Guard

Dated: _____

By: _____

      (Signature)          (Title)

This notice must remain posted for sixty consecutive days from the date of posting and must not be altered, defaced, or covered by any other material.

If employees have any questions concerning this notice or compliance with any of its provisions, they may communicate directly with the Regional Director, Chicago Region, FLRA, whose address is: 224 S. Michigan Avenue, Suite 445, Chicago, IL, 60604, and whose telephone number is: (312) 886-3465.

\*    \*    \*

**IV.**

Subject to the above modifications, the FLRA's petition to enforce its order is granted.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

CLAY, Circuit Judge, concurring in part and dissenting in part. I concur in Parts I, II, and IV of the opinion and in the judgment. I write separately because I believe that the majority improperly and unnecessarily redrafts the FLRA's order in Part III of the opinion in lieu of enforcing the order as written.

In February 2014, the Michigan Army National Guard (the "Guard") terminated two dual-status technicians for misconduct. Dual-status technicians are arguably military employees, 32 U.S.C. § 709(b)(2), as well as "[f]ederal civilian employee[s]" who are "assigned to a civilian position." 10 U.S.C. § 10216(a). The technicians appealed their terminations through the internal administrative process, in which they were represented by the Laborer's International Union of North America, Local 2132, AFL-CIO (the "Union"). In connection with their appeal, the Guard's deputy general counsel sent a letter to the technicians' union representative prohibiting "any and all communications with employees or representatives of [the Guard] regarding this matter" outside the presence of Guard counsel.

The Federal Labor Relations Authority ("FLRA") interpreted the letter to constitute a "complete and unqualified ban on communications" that "extended far beyond the scope of the internal administrative hearings concerning the technicians' misconduct and prohibited private communications with *all* bargaining-unit employees, to include potential witnesses and even other bargaining-unit employees who may have been concerned about their own continued employment." *Michigan Army Nat'l Guard v. Laborer's Int'l Union of N.A., Local 2132, AFL-CIO*, 69 F.L.R.A. 393, 395, 397 (May 25, 2016) (emphasis in original). The FLRA concluded that the letter "tended to interfere with employees' right under § 7102 to participate in union activities" and therefore held that it constituted an unfair labor practice in violation of § 7116(a)(1) of the Federal Service Labor-Management Relations Statute ("FSLMRS"), 5 U.S.C. §§ 7101-7135. *Id.* at 397.

Accordingly, the FLRA ordered the Guard to cease and desist from prohibiting private communications between bargaining unit employees and their union representatives and from otherwise interfering with, restraining, or coercing bargaining unit employees in the exercise of their rights as assured by the statute. The FLRA further ordered the Guard to post and electronically distribute a notice informing bargaining unit employees that the Guard had violated the FSLMRS and further informing them of their rights under the statute. The Guard refused to comply. This matter comes before the Court upon the FLRA's petition for enforcement of its order.

The panel unanimously concludes in the majority opinion in this case that substantial evidence supports the FLRA's determination that the Guard's letter constituted a violation of the FSLMRS. That alone should end the case. All that this Court was asked to do is review the propriety of the FLRA's grant of summary judgment in favor of the Union and then grant the petition to enforce the order accordingly.

Nonetheless, the majority opinion goes further and rewrites the order so as to withstand further scrutiny under the FLRA's reasoning. This decision is, quite frankly, perplexing. Indeed, although the majority indicates that this Court has the "power" to modify the order pursuant to 5 U.S.C. § 7123(c), it offers no justification for doing so other than that the Guard asked.[1] This case does not present a situation where the Court is obligated to draft a "savings construction" in order to salvage as much of the order as possible. And the majority does not explain under what circumstances it is appropriate or expeditious for us to do so. Certainly, we do not want the Court to take it upon itself to redraft orders without sufficient justification. But the majority does not explain what makes this case special, saying only that "a modification to the proposed order is required to conform it more precisely to the basis of the FLRA's decision." Even this goes unexplained. Simply put, whatever circumstances might make it appropriate for

---

[1]The majority opinion does include the unsupportable statement that it is modifying the FLRA's order "to clarify that it does not provide broader relief than the findings about the scope of the letter can support." The problem with the majority's assertion is that the order as originally drafted is actually completely in sync with the reasoning supporting it, and—the majority's rhetorical flourish notwithstanding—the majority opinion does nothing to explain how the order can be read more broadly than the reasoning upon which it is based.

the Court to rewrite such an order, the majority does not adequately explain why it thinks they are present here.

The Guard created the problem giving rise to this litigation by drafting a slapdash, blanket prohibition on all employee communications with the Union and refused every opportunity to narrow it; and there is no reason why the Court should assume the obligation of rewriting the order to accommodate a clearly unreasonable and avoidable violation of the law—rather than simply uphold the FLRA's petition for enforcement of its order.

For these reasons, I respectfully dissent from Part III of the opinion.