Annette Quintana **PÉREZ**, Plaintiff,

v.

**PUERTO RICO NATIONAL GUARD, et al., Defendants.**

Civil No. 13–1027(DRD).

United States District Court, D. Puerto Rico.

June 28, 2013.

---

Mayra Vanessa Estrella Perez–Valdivieso, Rovira–Rodriguez Law Offices, Coto Laurel, PR, for Plaintiff.

Damaris Ortiz–Gonzalez, Department of Justice, Vilma M. Dapena–Rodriguez, San Juan, PR, for Defendants.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

### I. INTRODUCTION

Annette Quintana Pérez ("Quintana" or "Plaintiff") filed claims of sexual discrimi-

nation, sexual harassment, and retaliation against the Commonwealth of Puerto Rico, the Puerto Rico National Guard[1] and Chief Master Sergeant (CMSgt.) Hector Mangual in his official and personal capacity (Docket No. 1). Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e *et seq.*, and 42 U.S.C. § 1983. Plaintiff further alleges Fourteenth Amendment Equal Protection violations for sexual discrimination and harassment.

Pending before the Court are two motions to dismiss; one from the Commonwealth of Puerto Rico, the Puerto Rico National Guard, and Chief Master Sergeant Mangual in his official capacity (Docket No. 15) and the other from Mangual in his personal capacity (Docket No. 18).

### II. RELEVANT FACTUAL BACKGROUND & PROCEDURAL HISTORY

Quintana simultaneously served as Technical Sergeant for the Puerto Rico National Guard and a permanent civilian employee in Ponce, Puerto Rico (Docket No. 1, pp. 1–2). She worked in the National Guard's Counterdrug Program as a drug prevention specialist. Defendant, CMSgt. Mangual, was her immediate supervisor. Quintana claims that, while on temporary duty in Wisconsin for an Operational Readiness Exercise in 2002, CMSgt. Mangual convinced her to walk around the base with him and forced "intimacy" on her (Docket No. 1, p. 5). Quintana felt ashamed and did not report the incident.

---

1. The Court notes that the complaint refers to Defendant as the Puerto Rico Air National Guard. However, documents provided by Defendant refer to Defendant as the Puerto Rico National Guard (Docket Nos. 15, 21, and 27). For purposes of this *Opinion and Order,* the Court accepts that these alternate identifications refer to the same entity, which the Court will refer to as Puerto Rico National Guard.

Between the 2002 incident and 2010, Quintana alleges CMSgt. Mangual made constant sexual insinuations and invitations (Docket No. 1, p. 6). Quintana did not report any of the insinuations or invitations for fear of losing her job and damaging her reputation.

Quintana claims that, during another Operational Readiness Exercise on March 7, 2010, CMSgt. Mangual told her that he was going to go to her room because they were expected to be released early and did not have to work the next day (Docket No. 1, p. 6). Quintana states that CMSgt. Mangual called her "insistently" on her cell phone that night. Quintana did not answer, and CMSgt. Mangual left a message saying, "This was not going to stay like this." (Docket No. 1, pp. 6–7).

Quintana was subsequently transferred from the Ponce station to the Ft. Buchanan Guaynabo station. Quintana alleges that CMSgt. Mangual told her she was transferred because if she was closer to him then she could not refuse his sexual invitations (Docket No. 1, p. 7). Quintana claims that CMSgt. Mangual continued to request sexual favors while stationed at Ft. Buchanan. Quintana did not report the March 7, 2010 incident or the purported intent behind the transfer. She, however, did tell a co-worker, Sergeant Caroline Nieves of this event.

On September 13, 2011, during an annual National Guard training in Carolina, Puerto Rico, Quintana claims CMSgt. Mangual called her several times and, after she did not answer, came to her hotel room [2] (Docket No. 1, pp. 7–8). Quintana claims that she opened the door, and CMSgt. Mangual told her that he wanted to have sex with her. CMSgt. Mangual then purportedly forced her to have sex with him (Docket No. 1, p. 8).

Quintana reported the September 2011 incident to Senior Master Sergeant (SMSgt.) Hernan Berrios (Docket No. 1, p. 9). Quintana states that SMSgt. Berrios informed her that he had heard about the situation but did not investigate because he learned of it through gossip. SMSgt. Berrios reported the situation to the Counterdrug Program Coordinator, Major (Maj.) Frontanes. Maj. Frontanes transferred Quintana to the Ponce station immediately (Docket No. 1, p. 9).

In January of 2012, three months after the transfer to Ponce, Maj. Frontanes transferred Quintana back to Ft. Buchanan Guaynabo.

In February of 2012, Quintana requested a transfer to Ponce but Maj. Frontanes denied it (Docket No. 1, p. 10). Quintana states that CMSgt. Mangual's sexual advances continued and she reported it to SMSgt. Berrios, but SMSgt. Berrios did not take any further action (Docket No. 1, p. 10).

On March 2, 2012, after leaving the psychological clinic, Quintana encountered CMSgt. Mangual and showed him a sick slip from the clinic and told him that everything she was going through was his fault. CMSgt. Mangual responded by saying he was going to tell Maj. Frontanes to "take the gloves out of her face" (Docket No. 1, p. 10)

On March 5, 2012, Quintana claims that CMSgt. Mangual asked if they could meet before they went to the Ft. Buchanan office. She refused and suffered a panic attack. Quintana was hospitalized for depression (Docket No. 1, p. 11). She

---

**2.** Plaintiff's *Complaint* does not specifically state that the room was her hotel room but the Court so concludes. Additionally, the Court notes that her hotel room was paid for by the Puerto Rico National Guard while Plaintiff attended the annual training (Docket No. 1, pp. 7–8).

suffered a second panic attack during a meeting for all of the Counterdrug personnel led by Maj. Frontanes and CMSgt. Mangual. Following the second panic attack, Quintana met with the Sexual Assault Respond Coordinator. The coordinator assigned Quintana to the Victims Advocate and Suicide Prevention Specialist (Docket No. 1, p. 11).

On May 7, 2012, Quintana filed a complaint with the Equal Employment Opportunity Commission ("EEOC") (Docket No. 1, p. 4). The EEOC informed her that they lacked jurisdiction because the National Guard had an Equal Employment Opportunity Office ("EEOO") and that she needed to file with her grievance with that agency.

On June 26, 2012, Quintana filed a complaint with the National Guard's EEOO, alleging sex-based discrimination, sexual harassment, sexual assault, and hostile work environment (Docket No. 1, p. 4). The EEOO dismissed the claim on November 13, 2012.

The Puerto Rico National Guard Counterdrug Program released Quintana on September 30, 2012, due to funding limitations (Docket No. 1, p. 12).

Quintana filed the instant action with this Court on January 11, 2013 (Docket No. 1). Defendants Commonwealth of Puerto Rico and CMSgt Mangual, in his official capacity only, moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Docket No. 15). Defendant Puerto Rico National Guard later joined and supplemented that motion (Docket Nos. 21 and 27). Defendants assert Eleventh Amendment immunity and intra-military immunity. Further, Defendants claim that Eleventh Amendment immunity extends to individual defendants in their official capacities.

Defendant Mangual, in his personal capacity, moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket No. 18). Defendant asserts intra-military immunity against all claims. Additionally, Defendant avers the § 1983 claim is time barred and that there is no individual liability under Title VII.

Finally, all Defendants claim that Plaintiff has failed to adequately state Title VII and § 1983 claims. Defendants assert that Plaintiff does not plead the necessary facts as required by the "severe or pervasive" standard for hostile work environment claims under Title VII sexual harassment. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Additionally, Defendants claim that Plaintiff does not plead the requisite prima facie case for retaliation, specifically that Plaintiff was not engaged in a protected activity.

Plaintiff opposed the motion to dismiss on May 17, 2013. (Docket No. 28). Plaintiff rehashed the allegations from the original *Complaint* in support that her pleadings were adequate. Further, Plaintiff contends that applying *Feres v. U.S.* to this case would be extending *Feres* beyond the present case law. *Feres v. U.S.,* 340 U.S. 135, 145–46, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (a soldier is barred from recovering against a supervisor or the government for injuries suffered "in the course of activity incident to service.")

## III. MOTION TO DISMISS STANDARD

### A. 12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Under *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio–Hernandez v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' ")(quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established · by *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal*, 556 U.S. 662, 129 S.Ct. 1937. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 556 U.S. at 677–679, 129 S.Ct. 1937 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.' " · *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal*, 556 U.S. at 678,

129 S.Ct. 1937) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first · step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679, 129 · S.Ct. 1937. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679–80, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." · *Ocasio–Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556, 127

S.Ct. 1955); *Ocasio–Hernandez,* 640 F.3d at 12 (citing *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937); *see Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio–Hernandez,* 640 F.3d at 12 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.' "). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini,* 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset,* 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal,* 556 U.S. at 681, 129 S.Ct. 1937 ("To be clear, we do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical.... It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.,* 621 F.3d 10, 14 (1st Cir.2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[ ] out rhetoric masquerading as litigation.").

## B. 12(b)(1) Lack of Subject Matter Jurisdiction

A challenge under Rule 12(b)(1) constitutes a challenge to federal subject matter jurisdiction, which includes ripeness, mootness, sovereign immunity and, of course, subject matter jurisdiction. *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 362–63 (1st Cir.2001). Where subject matter jurisdiction is challenged under 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating the existence of federal subject matter jurisdiction. *Skwira v. U.S.,* 344 F.3d 64, 71 (1st Cir.2003).

Where, as in the instant case, the Court is presented with a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court should address this matter prior to determining whether the complaint of that case "states a cause of action on which relief could be granted." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." *Deniz v. Municipality of Guaynabo,* 285 F.3d 142, 150 (1st Cir.2002).

In order to rule upon a motion to dismiss under Rule 12(b)(1), the court applies the same standard of review which is applicable to motions under Rule 12(b)(6). *See Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994).

## IV. ANALYSIS

Courts traditionally have been "concern[ed] with the disruption of [t]he peculiar and special relationship of the soldier to his superiors that might result if the soldier were allowed to hale his superiors into court." *Chappell v. Wallace,* 462 U.S. 296, 304, 103 S.Ct. 2362, 76 L.Ed.2d

586 (1983)(internal citations omitted)(internal quotation marks omitted). As a result, there is intra-military immunity and a soldier may not recover against his supervisors or his government for injuries suffered "in the course of activity incident to service." *Feres*, at 145–46, 71 S.Ct. 153. Furthermore, when a superior makes an adverse decision towards a military member, there is no remedy for damages within civilian courts. *Fisher v. Peters*, 249 F.3d 433, 439 (6th Cir.2001). The fact that the tort is intentional "does not itself defeat *Feres*." *Day v. Mass. Air Nat'l Guard*, 167 F.3d 678, 683 (1st Cir.1999).

### A. Plaintiff's Dual–Status

▇ A plaintiff must be a member of the armed services for *Feres* to bar that plaintiff from utilizing civilian courts. The National Guard is federally funded and its training must comply with federal standards. *Ill. Nat'l Guard v. Fed. Labor Relations Authority*, 854 F.2d 1396, 1397–98 (D.C.Cir.1988). Consequently, the National Guard is a component of the Armed Forces of the United States. *Gilligan v. Morgan*, 413 U.S. 1, 7, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973).

In order to become a member of the National Guard of the United States, an individual must enlist as a member of the National Guard of a particular state. 10 U.S.C. §§ 591, 12201. A military member of a state national guard is a member of the Air National Guard of the United States, as well as the state national guard. 32 U.S.C. § 101(7)."

"Because the National Guard is not a full-time active force, National Guard technicians are employed to meet the day-to-day administrative, training, and logistic needs of the Guard." *Simpson v. U.S.*, 467 F.Supp. 1122, 1124 (S.D.N.Y.1979). The National Guard Technicians Act of 1968; 32 U.S.C. § 709(a), (b), (e) [3] governs "dual-status National Guard Technicians." "Employment as a technician is conditioned on concurrent membership in the National Guard because the technician's civilian and military functions are integrated." *Id.* National Guard technicians are "civilian employees of the Guard and Guard members." *Id.*

The National Guard also employees "non-dual status technicians." 32 U.S.C. § 709(c). Positions may only be occupied by a non-dual status technician when the "Secretary concerned" designates the position for a non-dual status technician. 32 U.S.C. § 709(c)(1). A non-dual status technician is "a civilian employee of the Department of Defense serving in a military technician position who ... (2) is employed under section 709 of title 32 in a position designated under subsection (c) of

---

**3.** A person is a National Guard dual-status technician if:

 (a) Under regulations prescribed by the ... Secretary of the Air Force, ... and subject to subsections (b) and (c), 1 persons may be employed as technicians in—

 (1) the organizing, administering, instructing, or training of the National Guard;

 (2) the maintenance and repair of supplies issued to the National Guard or the armed forces; ....

 (b) ... a person employed under subsection (a) must meet each of the following requirements:

 (1) Be a military technician (dual status) as defined in section 10216(a) of title 10.

 (2) Be a member of the National Guard.

 (3) Hold the military grade specified by the Secretary ... for that position.

 (4) While performing duties as a military technician (dual status), wear the uniform appropriate for the member's grade and component of the armed forces....

 (e) A technician employed under subsection (a) is an employee of the Department of the Army or the Department of the Air Force, as the case may be, and an employee of the United States.

32 U.S.C. § 709(a), (b), (e).

that section and when hired was not required to maintain membership in the Selected Reserve." 10 U.S.C. § 10217(2).

■ As *Feres* applies to uniformed members of the armed services, it is of critical importance whether Plaintiff is dual-status or non-dual status. In the case of dual-status National Guard technicians, Courts regularly apply *Feres*. *See Wright v. Park*, 5 F.3d 586, 589 (1st Cir.1993) ("while a technician's job is a composite, containing both civilian and military pieces, the job's dual aspects are inseparable"); *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 300 (5th Cir.2008) (holding that *Feres* applies dual-status National Guard technicians); *Wetherill v. Geren*, 616 F.3d 789, 796 (8th Cir.2010) ("Our recognition of the civilian aspect of the dual-status technician positions has given us no pause in applying the *Feres* doctrine to the military aspects of that position."). The Sixth Circuit has gone as far as stating that the position of a National Guard dual-status technician is irreducibly military in nature. *Fisher*, 249 F.3d at 441 (6th Cir.2001). However, in the case of non-dual status National Guard technicians, their civilian position can be separated from their military position thereby rendering *Feres* inapplicable. *Meister v. Tex. Adjutant Gen.'s Dep't*, 233 F.3d 332, 338 (5th Cir. 2000).

■ In the instance case, Plaintiff does not state whether she is a dual-status technician or a non-dual status technician under the National Guard Technician Act.[4] Nevertheless, the Court concludes that Plaintiff is a dual-status technician for a myriad of reasons. First, Plaintiff asserts that she is simultaneously a Technical Sergeant and a permanent civilian employee with the Puerto Rico National Guard and

that she works with the National Guard's Counterdrug Program (Docket No. 1., pp. 1–2). However, Plaintiff offers no facts as to what her civilian position entails.

Second, Plaintiff fails to assert that her Title VII claims arose from her civilian position or that she sustained § 1983 injuries in only her civilian capacity. *See Brown v. U.S.*, 227 F.3d 295, 299 (5th Cir.2000) (a plaintiff must claim Title VII violations arose "from their position as a civilian employee of a military department, or their position as a uniformed service member").

Third, the vast majority of Plaintiff's allegations occur while in her military position, such as Operational Readiness Exercises and annual training activities and/or under dual-status.

■ Fourth, any other allegations take place in connection with the Counterdrug Program. The Court takes judicial notice that National Guard drug interdiction and counter-drug programs are federally authorized and funded. 32 U.S.C. § 112.

Fifth, Plaintiff is, at all times, supervised by a uniformed member of the armed services. When Plaintiff did report her claims to her supervisors, she reported them up the chain of command. Even if these allegations were to take place in her civilian position, her civilian position appears to be closely connected and intertwined to her military position.

Accordingly, the Court concludes that Plaintiff is covered under "dual-status" and concludes that Plaintiff's civilian position and uniformed military position are sufficiently intertwined. As a result, any of the alleged injuries arose from her uniformed military position. Therefore, the

---

4. "Judges are not expected to be mindreaders ... a litigant has an obligation to spell out its arguments squarely [and] distinctly, or else forever hold its peace." *U.S. v. Zannino*, 895 F.2d 1, 17 (1st·Cir.1990) (internal citations omitted).

court determines that *Feres*, and its progeny, applies.

### B. Incident to Service

After a plaintiff is determined to be a member of the armed services, her injuries must be incident to service for *Feres* to bar civil actions. To determine whether an injury was incident to service the court considers,

> whether it occurred on a military facility, whether it arose out of military activities or at least military life, whether the alleged perpetrators were superiors or at least acting in cooperation with the military ... whether the injured party was himself in some fashion on military service at the time of the incident.

*Day v. Mass. Air Nat'l Guard*, 167 F.3d 678, 682 (1st Cir.1999) (citing *U.S. v. Johnson*, 481 U.S. 681, 686, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987)). "No single element in the equation, the Supreme Court has said, is decisive." *Day*, 167 F.3d at 682 (citing *U.S. v. Shearer*, 473 U.S. 52, 57, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985)).

In *Day*, the plaintiff, a member of the Massachusetts Air National Guard, claimed other servicemen woke him in the middle of night, stripped him, carried him outside, forced him to kneel on the ground, and then forcibly inserted a traffic cone between his buttocks. *Id.* at 681. The First Circuit determined that, although the incident was "despicable," the plaintiff's alleged injuries "were incident to military service based primarily on Day's duty status, the on-base location of the injuries, and liability of the wrongdoers to military discipline." *Id.*

In the instant case, the Court finds that Plaintiff's alleged injuries[5] are incident to military service. Any incident of sex discrimination, sexual harassment, and retaliation, supported by facts in the complaint, either occurred on a military facility, during temporary duty, during training exercises, while attending training, and/or during duty hours. Further, all of the claims are against her uniformed military supervisors.

Plaintiff's first allegation, in 2002, of sexual harassment is against CMSgt. Mangual. It occurred on a military base while on temporary duty in Wisconsin for an Operational Readiness Exercise inspection. The Operational Readiness Exercise is a military activity, the base is a military facility, Plaintiff engaged in military service, and CMSgt. Mangual was her uniformed supervisor.

Plaintiff's second allegation, on March 7, 2010, of sexual harassment is against CMSgt. Mangual and occurred during another Operational Readiness Exercise. The incident occurred off-base at a hotel. Plaintiff was at the hotel due to the Operational Readiness Exercise. Plaintiff does not state that this particular hotel was paid for by the Puerto Rico National Guard but states that another hotel was paid for by the Puerto Rico National Guard. Due to the fact that Operational Readiness Exercises are mandatory, the Court concludes that this hotel was also paid for by the National Guard. For the above reasons, the incident arose out of a military activity. Further, CMSgt. Mangual was her uniformed supervisor.

Plaintiff's third allegation, sometime between March of 2010 and July of 2010, of sexual harassment is against CMSgt. Mangual and occurred in relation to her position as a Counterdrug Prevention Specialist. Plaintiff was transferred to a new

---

**5.** The Court notes that the majority of Plaintiff's Title VII and § 1983 allegations are time barred. Nevertheless, out of abundance of caution and for the sake of completeness the Court addresses all of these claims as timely and analyzes them under *Feres*.

station, a decision which was purportedly made by CMSgt. Mangual. CMSgt. Mangual was her uniformed supervisor and was acting in cooperation with the military on an employment activity sponsored by federal funds.

Plaintiff's fourth allegation, on September 13, 2011, of sexual harassment is against CMSgt. Mangual and occurred while on annual training. The incident occurred off-base at a hotel paid for by the Puerto Rico National Guard. Plaintiff was at the hotel due to the annual training and for those reasons it arose out of a military activity. Further, CMSgt. Mangual was her uniformed supervisor.

Finally, Plaintiff's allegations of retaliation involved her being transferred locations in the Counterdrug Program and being involuntary released from the Puerto Rico National Guard Counterdrug Program. Uniformed officers purportedly made the decisions to transfer the Plaintiff. Release Orders from a National Guard program, without any further information, appears to be in cooperation with the military.

The majority of the allegations are in connection with activities funded, required, and to the benefit of the National Guard. Thus, for the above reasons, the Court concludes that Plaintiff's alleged injuries are incident to military service.

### C. Section 1983 Claims

#### 1. Claims for Damages

 Section 1983 does not create any independent substantive rights; Section 1983 is only a procedural vehicle to vindicate constitutional and other federal statutory violations brought about by state actors.[6] *See Baker v. McCollan,* 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)("Section 1983 ... is not itself a source of substantive rights, but [merely provides] a method for vindicating federal rights elsewhere conferred...."); *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Lockhart–Bembery v. Sauro,* 498 F.3d 69, 74 (1st Cir.2007); *Cruz–Erazo v. Rivera–Montañez,* 212 F.3d 617 (1st Cir.2000). Again, Section 1983 merely provides a mechanism to remedy for deprivations of rights that are federally enshrined elsewhere. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

Plaintiff brings a sexual harassment claim under the Fourteenth Amendment's Equal Protection clause through 42 U.S.C. § 1983. Plaintiff seeks damages and injunctive relief.

 *Feres* serves as preemptive bar which prevents armed service members from bringing claims for military matters in civilian court. *See generally, Feres,* 340 U.S. 135, 71 S.Ct. 153; *Chappell,* 462 U.S. 296, 103 S.Ct. 2362; *Day,* 167 F.3d 678. Under *Feres,* intra-military immunity applies to alleged injuries due to constitutional violations. *Chappell,* 462 U.S. at 305, 103 S.Ct. 2362. Intra-military immunity includes a bar on § 1983 claims against the United States or its components and individual guardsmen. *Day,* 167 F.3d at 683. Furthermore, the judicial shield extends beyond guardsmen in their official capacity, and bars claims against

---

6. Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
42 U.S.C. § 1983.

guardsmen in their personal capacity. *Wake v. U.S.*, 89 F.3d 53, 62 (2d Cir.1996) (upholding the dismissal of claims against individual defendants in their personal capacity pursuant to *Feres* ); *see also Diaz–Romero v. Ashcroft*, 472 F.Supp.2d 156, 164 (D.P.R.2007) (precluding claims, under *Feres*, against defendants in their official and personal capacities). As a result, Plaintiff's § 1983 claims for damages against the Commonwealth of Puerto Rico, the Puerto Rico National Guard, and Mangual in his official and individual capacities are not justiciable pursuant to *Feres*.

▬▬▬ Furthermore, states cannot be sued for monetary damages in federal court unless the state being sued waives its Eleventh Amendment immunity or consents to being sued. *See* CONST. amend. XI; *see generally, O'Neill v. Baker*, 210 F.3d 41 (1st Cir.2000); *Ciampa v. Mass. Rehabilitation Comm'n,* 718 F.2d 1 (1st Cir.1983); *Ezratty v. Puerto Rico*, 648 F.2d 770 (1st Cir.1981). "Absent waiver, neither a state nor agencies acting under its control may be subject to suit in federal court." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). Furthermore, "neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir.1991); *Wang v. N.H. Bd. of Registration in Medicine*, 55 F.3d 698, 700 (1st Cir.1995); *Vizcarrondo v. Bd. of Trustees of Univ. of P.R.*, 139 F.Supp.2d 198 (D.P.R.2001). However, the Eleventh Amendment does not bar prospective injunctive or equitable relief against state officials. *Nieves–Marquez v. Puerto Rico*, 353 F.3d 108, 123–124 (1st Cir.2003) (citing *Ex Parte Young*, 209 U.S. 123, 155–156, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).

Here, Plaintiff brings a § 1983 claim for damages against the Commonwealth of Puerto Rico. The Commonwealth of Puerto Rico did not waive immunity and therefore the Eleventh Amendment clearly bars this claim.

### 2. Claims for Injunctive Relief

▬▬▬ In regards to § 1983 injunctive relief, *Feres* only bars intra-military damages claims. *Wigginton v. Centracchio*, 205 F.3d 504, 512 (1st Cir.2000). As a result, a guardsman's § 1983 claim for equitable relief is not barred by *Feres* nor the Eleventh Amendment. To prevail in a § 1983 cause of action, a plaintiff must prove that the act in question occurred under color of state law and deprived him of rights secured to him either by the United States Constitution or by federal law. 42 U.S.C.A. § 1983. A defendant has acted under color of state law when he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (quoting *U.S. v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)).

▬▬▬ Although the Puerto Rico National Guard is a hybrid of state and federal government, it remains a federally funded entity governed by federal statute and whose actions are under color of federal law—not state law. *Ill. Nat'l Guard*, 854 F.2d at 1397–98 (the National Guard "occupies a unique position in our country's federal structure"); *Chaudoin v. Atkinson*, 494 F.2d 1323, 1329 (3d Cir.1974) ("the Adjutant General of Delaware is an agency or an agent of the United States"); *Vargas v. Chardon*, 405 F.Supp. 1348, 1351 (D.P.R. 1975).

In *Vargas*, the plaintiff brought a § 1983 claim for a wrongful termination. *Vargas*, 405 F.Supp. at 1351. The Court determined that defendant, a state appointed

official, administered a federally funded activity and the alleged illegal actions were pursuant to regulations issued by the National Guard Bureau. *Id.* As a result, the Court dismissed the § 1983 claim because the defendant acted as an agent of the Federal Government and, therefore, under color of federal, not state, law. *Id.*

In *Ellis v. Blum,* the Second Circuit held that state social services officials who administer the federal Social Security Act under federal authority did not act under color of state law for purposes of section 1983. *Ellis v. Blum,* 643 F.2d 68, 83 (2d Cir.1981). Similarly, the Seventh Circuit held in *Askew v. Bloemker* that, despite simultaneously acting under state and federal law, St. Louis police officers assigned to a federal investigation acted under color of federal law in relation to the investigation and subsequent arrests. *Askew v. Bloemker,* 548 F.2d 673, 677 (7th Cir.1976).

Here, the alleged of sexual discrimination, sexual harassment, and retaliation occurred while Plaintiff was either at a National Guard training, on National Guard temporary duty, or working for the Counterdrug Program or was under dual-status. The National Guard is federally funded and its training must comply with federal standards. *Ill. Nat'l Guard,* 854 F.2d at 1397–98. Further, the federal government funds state national guard drug interdiction and counter-drug activities. 32 U.S.C. § 112. As a result, the defendants acted as agents of the federal government and thus under color of federal law. *Cf. Wigginton v. Centracchio,* 205 F.3d 504 (1st Cir.2000) (Certifying to the Rhode Island Supreme Court two questions regarding a Rhode Island statute governing a joint state-federal enterprise, the Rhode Island Army National Guard, which proved to be dispositive of the National Guardsmen's § 1983 claim for reinstatement after he was fired purportedly contrary to the state

statute.) As federal law applies, the Court finds Plaintiff's § 1983 claim to be inapplicable because the defendants were not acting under the color of state law.

For the reasons stated above, the Court hereby **DISMISSES WITH PREJUDICE** Plaintiff's § 1983 claims against the Commonwealth of Puerto Rico, the Puerto Rico National Guard and Mangual in his official and personal capacity.

### D. § 1988

A prevailing party under a § 1983 claim may be awarded attorney's fees. 42 U.S.C. § 1988(b). As a result of the dismissed § 1983 claims, Plaintiff is not the prevailing party and the Court hereby **DISMISSES** her § 1988 claim against the Commonwealth of Puerto Rico, the Puerto Rico National Guard and Mangual in both his official and individual capacity.

### E. Title VII Claims

 Plaintiff brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e *et seq.* The federal government waives sovereign immunity for employment discrimination actions under the act, 42 U.S.C. § 2000e–16(a), which provides that military departments are prohibited from discriminating in employment decisions. *Misra v. Smithsonian Astrophysical Observatory,* 248 F.3d 37, 39 (1st Cir.2001). However, courts consistently interpreted the statute to apply only to civilian employees of the military and not to uniformed members of the Armed Forces. *Fisher,* 249 F.3d at 439 (6th Cir. 2001); *Hodge v. Dalton,* 107 F.3d 705, 708–09 (9th Cir.1997); *Randall v. U.S.,* 95 F.3d 339, 343 (4th Cir.1996); *Roper v. Dep't of the Army,* 832 F.2d 247, 248 (2d Cir.1987); *Gonzalez v. Dep't of the Army,* 718 F.2d 926, 928–29 (9th Cir.1983); *Cruz Lopez v. P.R. Air Nat'l Guard,* 1998 WL 136425 *1 (D.P.R.1998) (unpublished). Consequently, "[u]niformed members of the armed

forces have no remedy under Title VII of the Civil Rights Act of 1964." *Coffman v. Mich.*, 120 F.3d 57, 59 (6th Cir.1997) (holding that officer in the Army could not bring claims under the Americans with Disabilities Act, the Rehabilitation Act, or state law).

In the instant case, Plaintiff is a member of the National Guard making her a uniformed member of the armed forces and her Title VII claims arise out of activities incident to service. As a result, the Title VII claims against Co–Defendants Commonwealth of Puerto Rico, Puerto Rico National Guard, and Mangual in his official capacity are not justiciable pursuant to *Feres.*

For the reasons stated above, the Court hereby **DISMISSES WITH PREJUDICE** Plaintiff's Title VII claim against the Commonwealth of Puerto Rico, the Puerto Rico National Guard and Mangual in both his official and individual capacity.

### F. State Law Claims

*Feres* preempts state claims in addition to federal claims. *See Matreale v. N.J. Dep't of Military & Veterans Affairs*, 487 F.3d 150, 152 (3d Cir.2007) ("*Feres* doctrine of intra-military immunity bars a suit raising state law claims for damages for injuries arising from, or in the course of activity incident to, military service brought against a state national guard by a guardsman"); *Jaffee v. U.S.*, 663 F.2d 1226, 1239 (3d Cir.1981) (precluding a state suit for intentional tort under the *Feres* rationale); *Rogers v. U.S.*, 902 F.2d 1268, 1272 (7th Cir.1990) (barring a state false imprisonment claim under the *Feres* rationale to avoid threatening military discipline and effectiveness).

*Feres* is based on the rationale that "[m]ilitary discipline involves not only obedience to orders, but more generally duty and loyalty to one's service and to one's country. Suits brought by service members against the Government for service-related injuries could ... have the potential to disrupt military discipline in the broadest sense of the word." *U.S. v. Johnson*, 481 U.S. 681, 691, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) (discussing the rationale of *Feres* and its progeny). Allowing such claims, as in the present matter, to proceed in civilian courts, whether state or federal, would disrupt the relationship of the soldier and his superiors and threaten military discipline and effectiveness. Barring federal claims under *Feres*, but allowing divergent and separate state claims would fly in the face of the *Feres* rationale. *Jaffee*, 663 F.2d at 1239. In sum, Courts are "concern[ed] with the disruption of [t]he peculiar and special relationship of the soldier to his superiors that might result if the soldier were allowed to hale his superiors into court" whether that court is state court or federal court. *Chappell*, 462 U.S. at 304, 103 S.Ct. 2362.

Here, allowing Plaintiff's state law claims against her military supervisors to continue would remove *Feres*' teeth and contravene its underlying rationale. Therefore, having concluded that Plaintiff's injuries are incident to service and that *Feres* bars the Plaintiff's federal claims, the Court further concludes for identical reasons that *Feres* bars Plaintiff's state law claims.

Additionally, the state law claims are preempted under *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (areas involving "uniquely federal interests" state laws are preempted). Boyle sets out a two prong test to determine whether state claims are preempted. First, it must be "determined that an area of uniquely federal interest is implicated." *Id.* at 500, 108 S.Ct. 2510. Second, there must be an "identifiable federal policy or interest" that

significantly conflicts with "the operation of state law, or the application of state law would frustrate specific objectives of federal legislation." *Id.* State law will be preempted only when both prongs are satisfied.

 In the present controversy, there is the uniquely federal interest of maintaining discipline in the armed services, satisfying the first prong of the test. In *Boyle*, the U.S. Supreme Court stated that "civil liability of federal officials for actions taken in the course of their duty" is an area "found to be of peculiarly federal concern, warranting the displacement of state law." *Id.* at 505, 108 S.Ct. 2510. Further, the Court concluded that the procurement of military equipment is an area of uniquely federal interest. *Id.* at 504, 108 S.Ct. 2510. As procuring equipment for the military is a peculiarly federal concern, so too is maintaining military discipline and effectiveness an area of peculiarly federal concern and thus a uniquely federal interest. Additionally, Article I of the United States Constitution enumerates the power to create and maintain the armed forces is provided to the federal government. U.S. Const. art. I, § 8 cls. 12–16. National defense and military readiness have always been the responsibility of the federal government—not the state governments.

On the second prong of the test, the *Boyle* court did not accept that the *Feres* rationale was an identifiable federal policy or interest in regards to contractors, who were not in fact uniformed members of the armed services. *Id.* at 510, 108 S.Ct. 2510. Rather, the U.S. Supreme Court held that the Federal Tort Claims Act was the identifiable federal policy that conflicted with

state law and therefore determined the state claims were preempted. *Id.* at 511, 108 S.Ct. 2510.

However, in the instant case *Feres* satisfies the second prong of the test. Having concluded that Plaintiff and Defendants are a uniformed members of the armed services and Plaintiff's injuries are incident to service, *Feres'* intra-military immunity is an identifiable federal policy. Whereas *Boyle* involved derivative immunity because the Defendants were third-party civilian contractors, the instant matter involves uniformed members of the armed services. As a result, allowing state claims would be in significant conflict with the *Feres* rationale of maintaining military discipline and effectiveness.

The instant case therefore satisfies the *Boyle* test by implicating a uniquely federal interest and then the existence of a significant conflict between state law and federal interest or policy. Thus, under *Boyle*, the state claims are preempted.

Consequently, Plaintiff's state law claims are barred under *Feres* and in the alternative, are preempted under *Boyle*. Accordingly, the Court dismisses Plaintiff's state law claims with prejudice.

## V. CONCLUSION

Plaintiff's complaint alleges sordid and utterly reprehensible conduct. No person, male or female, military or civilian, should be subject to the despicable actions alleged in this case. Our holding today should not be construed as condoning the purported conduct of Defendants. Women have an equal right to serve in the armed services, and despite substantial gains in gender based equality in the military, there remain glaring issues of equal protection.[7]

**7.** On January 24, 2013, Defense Secretary Leon E. Panetta announced the end to the ban on female service members in direct ground combat. Claudette Roulo, Defense Depart Expands Women's Combat Role, U.S. Department of Defense News American

In 2012, 41% of active duty servicewomen stated they experienced crude/offensive behavior in the past 12 months and 23% of active duty servicewomen stated they experienced unwanted sexual attention in the past 12 months.[8] When a woman enlists in the armed services, her enlistment should not mean that she is signing away her rights to be free from sexual harassment. And in the unfortunate event that she is subject to lewd and lascivious conduct, she should not be free from any recourse.

We join the chorus of higher courts and renowned jurists who have vehemently expressed their disdain for the unbridled *Feres* doctrine. *See, e.g., Johnson,* 481 U.S. at 700, 107 S.Ct. 2063 (Scalia, J., dissenting) ("*Feres* was wrongly decided and heartily deserves the widespread, almost universal criticism it has received"); *Bozeman v. U.S.,* 780 F.2d 198, 200 (2d Cir.1985) ("The *Feres* doctrine is a blunt instrument; courts and commentators have often been critical of it"); *LaBash v. U.S. Dep't of the Army,* 668 F.2d 1153, 1156 (10th Cir.1982) ("Although many courts have expressed reservations about the continuing validity of the broad *Feres* doctrine, only the United States Supreme Court can overrule or modify *Feres*"); Walter T. Cox III, National Institute of Military Justice, Report of the Commission on the 50th Anniversary of the Uniform Code of Military Justice (2001), at 14 (noting that intra-military immunity constrains service members "ability to pursue apparently legitimate claims against the armed forces, many of which bear little if any relation to the performance of military duties or obedience to orders on their merits").

Forces Press Service, http://www.defense.gov/ News/NewsArticle.

Notwithstanding, the Court has an unfailing obligation to follow the law as it stands today and not as we wish it to be tomorrow. *Feres* currently is the law of the land and is binding upon this court. "Although *Feres* remains a controversial decision, we are bound by the Supreme Court's continuing adherence to it." *Kohn v. U.S.,* 680 F.2d 922, 925 (2d Cir.1982). The ability to rectify injustices, like those alleged by Plaintiff, lies in the hands of Congress and the U.S. Supreme Court and we respectfully urge those esteemed bodies to reexamine the *Feres* doctrine.

For the reasons stated above, the Court, with a heavy heart, **GRANTS** the pending motions to dismiss (Docket Nos. 15 and 18) and thus **DISMISSES WITH PREJUDICE** Plaintiff's federal law and state law claims against the Commonwealth of Puerto Rico, the Puerto Rico National Guard, and Mangual in his official and personal capacities. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

8. United States Department of Defense Sexual Assault Prevention Response Office, FY2012 Report on Sexual Assault in the Military (March 2013), http://www.sapr.mil/.